## Castner's Appeal. Ryan's Estate.

1. R. died, leaving three daughters, Ann, Martha and Mary, and five grand-children by a deceased daughter, Catherine. He left a will and after disposing of part of his estate gave the rest to trustees to divide the income into four equal shares, one-fourth part to be paid to each of the daughters, and the other fourth to the grandchildren. When the grandchildren reached the age of twenty-one, each was to receive his share of the principal as represented by the income received. In regard to the principal given in trust for the daughters, he provided that each daughter might appoint by will who should receive it after her death, and in default of such appointment by will, then the principal sum was to be paid to the child or children of such daughter in equal shares; but if either of said daughters should die without leaving issue, and without any last will, then the share of such daughter was to be continued under the same trusts as hereinbefore provided, "for the use and benefit of my surviving children, in equal proportions, in the same manner as hereinbefore directed as to the residue of my estate." The testator's daughter Martha died without issue and without having made any appoint-ment by will. The grandchildren, the children of Catherine, claimed that they were entitled to participate in the portion of the residuary estate which was held in trust for their aunt Martha. *Held*, that upon Martha's decease without children, and without having exercised the power of appointment as to the principal, the right to receive the income in equal proportions vested in her surviving sisters, Mary and Ann, and that each was entitled to appoint one-half of the principal by will.

2. The word "children" in a will does not include "grandchildren," unless it appears from the context to be so intended by the testator, or such mean-ing is necessary to carry out his manifest intent.

January 28th 1879. Before SHARSWOOD, C. J., MERCUR, GOR-DON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Orphans' Court of *Philadelphia county*: Of July Term 1878, No. 84.

The proceedings in this case were as follows: Lewis Ryan, the testator, died on the 23d of June 1850, leaving a will, by which certain trusts were created. The original trustees having died, Robert L. Reilly was appointed sole trustee thereunder, on March 6th 1877. The time having arrived for the distribution of the whole estate, Reilly, the trustee, filed his first and final account in the Orphans' Court, reporting $44,910.09 for distribution. No objection was raised to the account, and the only point of dispute was as to the proper mode of distribution which depended upon the construction to be given to one clause of Lewis Ryan's will.

The names of the parties appellant were Mrs. Mary Reilly, Martha Reilly, Anne Reilly, Mrs. Catherine Castner and H. Castner, Esq., her husband, in the right of the said Catherine and Robert L. Reilly. These are all children of the testator's daughter Catherine, who pre-deceased him.

The names of the parties appellees were Veronica Smith, Fannie F. Smith, Philip L. Smith, Daniel Smith, James N. Smith and Clement J. Smith, all of whom are children of the testator's daughter, the late Mrs. V. J. Smith.

[Castner's Appeal.]

There was no petition or answer. When the trustee filed this account in the Orphans' Court, showing a balance for final distribution, the parties all consented that it should be at once referred to N. Dubois Miller, Esq., as auditor, to settle and adjust the same, and report a scheme of distribution. The auditor, inter alia, reported: Lewis Ryan, the testator, died June 23d 1850, leaving a will, and leaving surviving him three daughters, Martha M. T., Ann E., and Mary V. J., wife of James M. Smith, and five grandchildren, Mary, Martha, Anne, Robert L. and Catherine, children of his deceased daughter Catherine, wife of Philip Reilly. Miss Martha M. T. Ryan died October 14th 1865, unmarried, leaving a will. Mrs. M. V. J. Smith, died April 2d 1876, leaving a will and six children, James M., Philip, Edwin, Fanny, Clement J. and Veronica, all of whom had been born before the death of Lewis Ryan. Miss Ann E. Ryan, died July 20th 1876, unmarried, leaving a will.

By his will, the testator, Lewis Ryan, bequeathed and devised his estate, after one or two specific legacies, as follows:—

"4. All the rest, residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath to my daughter Ann (so long as she shall remain unmarried), and my friends, William J. Duane and Joseph Patterson, and the survivors and survivor of them and the heirs and assigns of such survivor for ever, in trust, nevertheless, to grant, bargain, and sell the same at public or private sale, as they may deem most advantageous, and to invest the proceeds thereof in good and sufficient ground-rents or mortgages, and to receive the income and interest thereof, and to divide the said income and interest (including the income and interest of any stock or loan of the state of Pennsylvania, or of the corporation of the Kensington district, which I may hold at the time of my decease), into four equal shares or parts, and to pay one full and equal fourth part thereof unto each of my daughters, Ann, Martha and Mary, half-yearly, during all the time of their and each of their lives, for their sole and separate use, respectively, whether they be married or single, and without any control or supervision of any husband any of them may have, and without being in any way accountable for any debt or engagement of any husband any of them may have, and without being in any way accountable for any debt or engagement of any such husband, the receipt of each of my said daughters to be a sufficient discharge for such trustees; and as to the remaining fourth part of the said income and interest, in trust, to pay the same to my son-in-law, Philip Reilly, for the maintenance and education of the children of the said Philip and my late daughter Catherine, until the said children shall severally attain the age of twenty-one years; and as the said children shall severally attain that age, then, in trust, to pay the principal or capital sum on which such child had been receiving the income or

[Castner's Appeal.]

interest, to such child for his or her own use, provided, that if any of the children of my daughter Catherine should die under the age of twenty-one years, leaving lawful issue, the share of such child shall descend to and be enjoyed by such issue; but if any of the said children should die under age and without issue, then the share of such child shall go to and be enjoyed by the survivors, in equal shares or proportions, and from and immediately after the death of either of my said daughters, in trust, to pay, assign, transfer, and set over the principal sum on which such daughter, so dying, was entitled to receive the income or interest, to such person or persons, and for such uses, interests and purposes, as such daughter, by any last will or testament or instrument of writing in the nature of a last will or testament, notwithstanding her coverture, may direct, limit and appoint to receive the same; and for want of any such last will and testament, then to pay the said principal sum to the child or children of such daughter, in equal shares or proportions; but if either of my said daughters shall die without leaving issue, and without any last will or testament, then it is my will and desire that the share or portion of such daughter shall be continued under the same trusts as are hereinbefore provided for the use and benefit of my surviving children, in equal proportions, in the same manner as hereinbefore, directed as to the residue of my estate. Provided that if my daughter Mary should die, leaving her husband surviving, then it is my will, that the income and interest of her share shall be paid to her husband, James M. Smith, for the maintenance and support of his children, in the same way and manner as is provided for the children of my daughter Catherine Reilly."

Mr. Duane and Mr. Patterson were discharged as executors and trustees in July 1864, and Miss Martha Ryan and Mrs. M. V. J. Smith were appointed in their stead as trustees with Miss Ann E. Ryan. These ladies having all died, Robert L. Reilly was appointed sole trustee March 6th 1877.

Of the four parts or shares of the principal sum, the residue thus invested, one-fourth has been paid to the children of Mrs. Reilly absolutely, all of them having become of age. One other fourth part, representing the original share of Mrs. Smith, has been paid to her executors. The balance of this residue for distribution in the hands of the trustee, therefore represents the remaining two-fourths of the principal from one of which Miss Ann and Miss Martha Ryan each received the income as originally directed in the will of their father. The distribution of Miss Ann Ryan's share need not now be considered, as the controversy before the auditor turned entirely upon the distribution of Miss Martha Ryan's share of the principal. The only reference in her will to this share and her power of appointment over it, is in the third clause, viz.: "3d. I give to my sister, Ann, all interest from the estate of my late

father, in tne same way that I have received it during her life." It was generally conceded by the counsel, at least no argument to the contrary was ever suggested, and it is the opinion of the auditor, that this gave to Miss Ann Ryan only a life-interest in her sister's share, and consequently, except to this extent, Miss Martha Ryan failed to exercise the power of appointment given to her by the will of her father.   The proper award of this share therefore was the question presented for the auditor to decide.   Upon this two points arose :

1. To which of Lewis Ryan's heirs or devisees should the whole amount be awarded, and in what proportions ?

2. How should these shares be awarded under the wills of Lewis Ryan's daughters ?

As.solutions of the first point three hypotheses were advanced :

(1) Lewis Ryan died intestate as to this share, and it should be divided among the distributees entitled to take under the intestate laws as fixed at the time of Lewis Ryan's death.

(2) Upon Miss Martha Ryan's death without children or a will disposing of the principal, the right to receive the income in equal proportions vested in Mrs. Smith and Miss Ann Ryan, subject to Miss Ann's life interest, that therefore each was entitled to appoint one-half the principal by will.

(3) Upon Miss Martha Ryan's death the right to receive the income in equal proportions vested in Mrs. Smith, Miss Ann Ryan, and the children of Mrs. Reilly, and under the will of Lewis Ryan the share of Mrs. Reilly's children should be paid to them absolutely.

The argument in favor of hypothesis (1) as presented by Mr. Biddle in behalf of Mrs. Reilly's children, is this : The words used to create this trust are in each case only applicable to a trust to dispose of the income, and there is no disposition of the principal upon the contingency of the first beneficiary not disposing of her share. The words are " to receive the income and interest thereof, and to divide the said income and interest" into four equal shares, and to pay one-fourth " thereof" to his daughters.   In default of issue, and upon any of the daughters dying without any will, " then the share or portion of such daughter shall be continued [under the same trusts as are hereinbefore provided] for the use and benefit of my surviving children, in equal proportions, in the same manner as hereinbefore directed as to the residue of my estate."

The auditor reported that the first hypothesis was practically abandoned, and then further reported :  " The two other hypotheses may be considered together.   Hypothesis (2) is that upon the death of Martha without disposing of this principal, the right to dispose of it immediately rested in Miss Ann Ryan and Mrs. Smith, while hypothesis (3), while admitting that no intestacy exists, is to the effect that the trust is continued, not only for the benefit of Mrs.

Smith and Miss Ann Ryan, but also for the children of Mrs. Reilly in equal proportions.

" On behalf of this view, as opposed to the other, it was argued, 1. That it is in accordance with the rule of law that the heir cannot be disinherited, but by plain and clear words to that effect, and the result of such a construction of this clause as will make the continuance of the trust only for the benefit of the surviving daughters of the testator to the exclusion of Mrs. Reilly's children is practically to do this very thing. 2. That where any doubtful or ambiguous phraseology exists, the scheme of the whole will must be taken into consideration, and that, looking at this will as a whole, it is plain that the predominant thought in the testator's mind was the division of his residuary estate into such shares as would entitle all his children, and their representatives, to share alike, and have an equal portion of the residue ; therefore upon the failure of any one of the beneficiaries to dispose of the principal when a re-division is ordered, it must be interpreted to mean a division upon the same principle, and with the same interest to each, relatively to the others, as was fixed upon the first division, unless the words plainly show a contrary intention. These two rules ought undoubtedly to govern if we find it impossible to discover the true intention from the words alone, or if standing alone they express a wish plainly at variance with the whole scope of the will, or even fairly doubtful. Now is this the case ?

" The whole question must depend upon the construction to be placed upon the 4th clause, for there is nothing in the rest of the will which, in the opinion of the auditor, or apparently of that in any of the counsel, tends to explain it if any ambiguity does exist.

" By this clause the whole residuary estate is given to trustees to sell and invest, and to divide the income of the investments into four equal parts ; to pay one-fourth to each of his three daughters then living, and one to his son-in-law, Philip Reilly, for the maintenance of the children of the deceased daughter Catherine, and to pay to each of such children, as they came of age, the principal on which he had been receiving interest. In the same sentence, the further trust is provided to transfer immediately upon the death of either daughter the principal sum on which such daughter was entitled to receive the income, as she should appoint by will, and on failure to appoint, to her children ; but in case of no appointment and no children, then it was the testator's will that the share or portion of such daughter should be continued under the same trusts as were thereinbefore provided for the use and benefit of his surviving children, in equal proportions, in the same manner as before directed as to the residue of his estate. To hold, as is claimed by the counsel for Mrs. Reilly's children, that this direction means that they are to share in this second distribution of income equally with the testator's surviving daughters, it is necessary to assume

one of two things: either the trust for 'surviving children' referred to is taken to indicate a trust *similar* to that provided for his surviving children, in which all his heirs are to share equally, as directed in regard to the first division of the residue, and the kind of trust for the grandchildren be taken as included by the words referring only to the trust for the daughters; or else, if the term refers to the beneficiaries, as well as the kind of trust under which they are to take, grandchildren must be included under the term ' children.'

" If the trust for the daughters and that for the children of the deceased daughter were identical, it might be said that a reference to one would include the other, if merely used to indicate the *kind* of trust. But in one sense that which alone gives character to a trust, is really the duty devolving upon the trustee, and if these duties are different in trusts for two *cestuis que trustent*, the trusts can hardly be said to be identical in kind. Here the trust for Mrs. Reilly's children was to pay the income to the father until each child should come of age, when a certain share of the principal would then be paid to that child, with no power of appointment or provision for remainder; while the trust for the daughters was limited upon the further trust to pay the principal as each daughter might direct, or to her children, and in default of both, to continue upon the same trust, as provided for his surviving children. Now, the word ' children' being admittedly equivalent to daughters, it ought, if this argument be correct, to be possible to substitute the latter for the former, so that it would read, ' upon the same trusts as are hereinbefore provided for the use and benefit of my surviving daughters.' It appears to the auditor that this would fail to indicate the same *kind* of trust as that provided for the grandchildren. Or, again, if it be admitted that the trusts are so exactly alike that a reference to either will indicate the other, then the one term may be substituted for the other, without altering the meaning of the sentence, and we might read it thus, ' upon the same trusts as are hereinbefore provided for the use and benefit of my grandchildren;' but it is very apparent that daughters could not claim a portion of the income from this new trust of this one-fourth or a power of appointment over any part of the principal, if such had been the language of the testator. The meaning would have been entirely intelligible had he simply said, ' upon the same trusts as are hereinbefore provided;' if this was the intention, why should this limit be added, unless to distinguish between the trusts theretofore provided? It is the opinion of the auditor, therefore, that, if taken merely as referring to the *kind* of trust, this term does not include the trust for the grandchildren; and he is probably led to this conclusion the more readily, because he cannot but think that by this expression the testator intended specifically to point out the *beneficiaries*, as well as to indicate the nature of the trust;

perhaps it may not be improper to add, that the fact that upon the first argument no other view seems to have been taken by counsel, confirms his impression that this is the natural and obvious reading.

"If it does refer, then, to the beneficiaries, can the grandchildren be referred to under the term ' children ?'

"It was said by GIBSON, C. J., in Dickinson *v.* Lee, 4 Watts 83, that ' where it is necessary to effectuate a manifest intent, grandchildren may undoubtedly take by the designation of children, though it is by no means the legal acceptation of the word. They are suffered to do so, principally, if not exclusively, in two cases : where the word is used evidently as co-extensive with issue, which is a word of very general import; and where there are no children literally to answer the description, and then grandchildren are let in *ut res magis valeat quam pereat,*' or as was said by ROGERS, J., in Hallowell *v.* Phipps, 2 Whart. 380 : ' Their being included in that term is only permitted in two cases, viz. : from necessity, which occurs when the will would remain inoperative, unless the word *children* were extended beyond its natural import; and where the testator has clearly shown by other words, that he did not intend to use the word *children* in the proper actual meaning, but in a more extensive sense.'

"Neither of these reasons exists in the present case, and under the weight of this authority, which has not been disputed or even materially modified, such a change in the ' actual meaning' cannot be resorted to. See also Horwitz *v.* Norris, 13 Wright 217. No extraneous evidence was offered to show what was the natural wish or desire of the testator, and upon the face of the will there is nothing which renders the intention, as expressed by the auditor's interpretation, unnatural or improbable. It might well be that the testator, having given to the children of his deceased daughter their mother's share of the estate absolutely, he should desire to retain the balance under the control of and for the benefit of the other daughters, even to the exclusion of the deceased daughter's children, as was the case in Hough *v.* Hough, 4 Rawle 363.

"It was further argued that the term ' residue' is used in two places only ; and the testator having first disposed of the residue, so that all might share alike, when he again refers to the division of the residue, he intends that in *this portion* all should share alike, as in the general distribution of the residue. But the words cannot be regarded without their context, and if, as in the opinion of the auditor is the case, the testator had already said that the daughters were to share the income equally, the reference to the former distribution of the residue is merely for the purpose of additional explanation as to the manner of distribution ; it would be absolutely impossible to divide in the *same* equal proportions, because originally there were four shares, and after the death of

one of the beneficiaries, only three could be made, which of itself shows that the words are merely used as an explanatory reference, and not in their literal sense.

"The auditor is of the opinion on the first point of this case that hypothesis (2) is the correct statement of the testator's intention and the interpretation of this will.

"But here arises the question upon the second branch of this case, viz.: how shall these shares be awarded under the wills of Lewis Ryan's daughters? more particularly in regard to the share belonging to Mrs. Smith's estate. By her will Mrs. M. V. J. Smith directed as follows, after certain specific bequests: 'All the rest and residue of my estate and all of the several estates and properties of my late father, Lewis Ryan, or my said late husband, and of any other person or persons, over, or in respect to which I have any power or authorities of gift, bequest, devise or appointment, by their several and respective last wills and testaments, or otherwise, in exercise and pursuance of such powers or authorities, and by force and virtue of the same, and of all and every power and authority me enabling and empowering, I do give, devise and bequeath to the Fidelity Trust and Safe Deposit Company, its successors, and my son, Clement J. Smith, and his heirs and assigns, in trust, to lease or invest the same, or the proceeds thereof, and keep the same leased and invested, and receive and collect the net income thereof, and semi-annually, on the first days of January and July in each year, to pay and divide the same to and among my sons and daughters then living, in equal shares equally, during their several and respective natural lives, and so that the same shall not be liable for, or subject to their several and respective debts, contracts or engagements, and upon and after their several and respective deaths to convey, assign and transfer the share of the principal of my said residuary estate, producing the income of the one so dying to such person or persons, and for such estates as he or she may by will have appointed, and in default of such appointment, to the person or persons that would take under him or her, if he or she had died intestate owning the same.'

" ' I give my said trustees power to sell any part of the real estate hereby devised to them to such person or persons, at such times, and in such portions as they may deem best, and to make good and sufficient deeds, conveyances and assurances to the purchaser or purchasers thereof, who shall not be bound to see to the application of the purchase-money, or responsible for any unfaithfulness or default of my said trustees. I appoint the said Fidelity Trust and Safe Deposit Company and my said son Clement J. Smith, executors of this, my will.'

"Mr. Weil, representing the interests of several of Mrs. Smith's children, who desire that whatever may be awarded them shall be given to them absolutely and not be encumbered with the trust, pre-

sented three reasons for holding the trust of this share of Mrs. Smith's estate invalid. It was argued first that Mrs. Smith never had control over any part of this fund under her father's will, that therefore it could not be included in this trust created in her own will out of the funds derived from her father's estate. The words of Lewis Ryan's will are, that the trustees shall pay over to the appointees of the daughters 'the principal sum on which such daughter so dying was entitled to receive the income or interest.' It was urged before the auditor that the execution of a power must be strictly construed, and that unless the exercise of it came clearly within the letter of the authority, it is void; that as a matter of fact Mrs. Smith never for one moment during her life was actually entitled to receive a dollar of the income derived from Miss Martha Ryan's share, because Mrs. Smith had died before Miss Ann Ryan's life estate in it had expired. The auditor does not think that this view can be sustained. It is in accord with the principles laid down in all of the cases, to hold, that upon the failure to appoint on the part of Martha the share subject to her power of appointment, went as directed under the will of Lewis Ryan, and that the rights thus acquired vested in interest immediately upon the happening of the contingency contemplated by his will, *i. e.*, the death of Martha without an appointment and without children. In Bristow *v.* Skirrow, L. R. 10 Eq. 1, C. bequeathed a household estate after his wife's death in default of her appointment to his next of kin living at the death of the survivor of himself and his wife. She only gave a life-interest in it to T., and it was held that it vested in the next of kin of the testator living at the death of the wife, subject to the life-interest of T. The same state of facts exists in the present case, and the two surviving daughters were entitled upon the death of Martha to receive each one-half of the income derived from this share, in accordance with the will of the testator, subject to Miss Ann Ryan's life interest. There is nothing in the will, it must be observed, which limits the exercise of the power of appointment to that part of the principal, the income from which the daughter was entitled to receive, and which she actually did receive during her lifetime; it is simply a general right to dispose of all that from which she was entitled to receive the income, whether in the present or the future, so long as the right was an actual vested right and not a mere contingent remainder. This question is really one of great importance to the heirs, for unless the children of Mrs. Smith claim under her appointment they must seek a title through some other source. It is however unnecessary to discuss this question further, for the auditor is of the opinion that Mrs. Smith had the right to exercise her power of appointment over one-half of this share.

"2. It was argued that the trust created by Mrs. Smith's will of this estate is void, as infringing the law against perpetuities. It

will be remembered that in the statement of facts agreed upon, it is noticed that all of Mrs. Smith's children were living at the death of Lewis Ryan.

"In argument the counsel for the *cestuis que trustent* callep attention to the rule of construction, that whenever a limitation *may* be void, the law will so consider it: 1 Jarman on Wills 233; Williams on Real Property *263; but the cases supporting the rule so stated are all of them cases in which the rule might be infringed by reason of some state of facts which might exist, and in that case the devise is void, notwithstanding the possibility of the *non*-existence of the state of facts, *e. g.*: 'If the devise or bequest be in favor of an unborn person, who may not answer the required description within a life and twenty-one years, it will be void, although a person should happen to answer the description within such period.' In this case the rule was attempted to be applied, because of the possibility that the children, with whom was lodged a power of appointment under this will, might improperly exercise it; but it is clear that it is not the possibility of a voluntary violation of a rule of law which renders a devise void, but the possibility that without the violation of any one, there may exist a state of facts which would render the trust void. Otherwise, the rule might be applied to every case in which dominion over property is given to the devisee. Had the testatrix given this power of appointment to children not *in esse* at the time of the death of the original testator, then it would undoubtedly be a void execution of the power: Wollaston *v.* King, 8 Eq. 165. Not so, however, if, as was expressly admitted, all of the donees of the powers under Mrs. Smith's will were alive at the time of the original testator's death: Farwell on Powers 227, 257; Sugden on Powers 492; Phipson *v.* Turner, 9 Sim. 227; Slack *v.* Dakyns, L. R. 15 Eq. 307. In the last cited case, a testator gave certain property upon trust for his granddaughter for life, and after her death to such of her children as she should appoint. She appointed to each of five children (all of whom were living at the death of the original testator), and 'after the death of each child, directed that the share in which the child had a life-interest should be held in such manner as the child might by will appoint, with limitations over, in default of appointment, in favor of the children of said five children: * * *Held* a good exercise of the power of appointment given by the will of the testator.' The same principle certainly controls this case."

The auditor made a scheme of distribution in accordance with the views expressed in this report. To this report, the following, among other exceptions, were filed by the appellants:

1. The auditor erred in awarding three-fourths of the residuary estate to the legatees under the will of Ann Ryan.

2. In awarding one-fourth of the residuary estate to the trustees under the will of Mary V. J. Smith.

[Castner's Appeal.]

4. In not awarding two-thirds of the balance of the residuary estate to the distributees under the will of Ann E. Ryan ; one-sixth thereof to the trustees under the will of Mary V. J. Smith, and one-sixth to the children of Mrs. Catherine Reilly.

6. The auditor erred in his conclusion of law, that the share of the estate from which Martha Ryan received the income, was to be distributed, one-half in accordance with the will of Ann E. Ryan and one-half in accordance of the will of Mary V. J. Smith.

7. The auditor erred in not awarding to the children of Catherine Reilly one-third of the principal from which Martha Ryan received the income.[1]

The court dismissed the exceptions and confirmed the report, and from this decree this appeal was taken.

*George Biddle* and *George W. Biddle*, for appellants.—The appellants, Mrs. Reilly's children, assert for themselves the right to share in that portion of their grandfather's residuary estate only to which their mother would have been entitled had she lived, but no more.    They contend that at Martha Ryan's death her estate continued, in trust, " in equal proportions," which was, as the testator says, " in the same manner as hereinbefore directed as to the residue of my estate ;" the trusts being the same trusts that he had already provided for his surviving children.    The " surviving children," at the date of the will, were, of course, Mary (Mrs. Smith), Martha and Ann, because Mrs. Reilly had already died.

In construing any will, it is well established that the intention of the testator is to be gathered from the whole face of the will. This intention, when found, has to be carried into effect as far as possible, and any particular clause must yield to what appears to be the whole scheme of the instrument: Sheetz's Appeal, 1 Norris 213 ; Middleswarth *v.* Blackmore, 24 P. F. Smith 414.

It follows, therefore, that when two constructions can be given to a clause of the will, that one is to be preferred which best effectuates, not some particular intent, which may be extracted from the words of one clause, but that general intent drawn from the whole instrument.

In a conflict between the general intent and a particular one, the former must prevail: Musselman's Estate, 5 Watts 9 ; Doebler's Appeal, 14 P. F. Smith 9 ; Hitchcock *v.* Hitchcock, 11 Casey 393 ; Sheetz's Appeal, 1 Norris 213 ; Middleswarth *v.* Blackmore, 24 P. F. Smith 414.    Now, among the principles laid down for the determination of the general intent, there are three which apply with peculiar force to the present case.

1. The scheme of distribution apparent from a study of the in-

---

[1] Another appeal was taken in these proceedings, a report of which will be found in the succeeding case: Smith's Appeal, *post*, 493.—Rep.

[Castner's Appeal.]

strument as a whole, is to be carried into effect, rather than its particular clauses; and especially it is true where the scheme is one of equality: Malone *v.* Dobbins, 11 Harris 296; Weber's Appeal, 5 Id. 474.

2. The heirs-at-law can only be disinherited by an express devise, or by necessary implication, absolutely inconsistent with the intestate law. A testator is presumed to intend that all those entitled under the intestate laws, shall take under his will, and every fair intendment is to be made in their favor: Rupp *v.* Eberly, 29 P. F. Smith 141; Hitchcock *v.* Hitchcock, 11 Casey 393; Lipman's Appeal, 6 Id. 180; Cowles *v.* Cowles, 3 P. F. Smith 175; Stehman's Appeal, 9 Wright 398; France's Estate, 25 P. F. Smith 220.

3. That a testator is not supposed to contemplate intestacy as to any portion of his estate, but that his will is to be effective under any contingency. If, therefore, of two possible constructions of a clause, the one, under some circumstances, possible at the date of the will, might become void and nugatory as to part of the property, while the other clause would be effective under all circumstances, the latter is to be preferred: Doebler's Appeal, 14 P. F. Smith 9.

Now, the construction put upon this clause of Lewis Ryan's will, by the court below, signally violates every one of these rules.

(1.) It makes an unequal distribution, under this clause, of the shares of daughters dying intestate, while the whole scheme of the will is that the estate shall be equally divided among the four daughters, or their legal representatives.

(2.) It disinherits some of the heirs-at-law of the testator, viz. : the children of Mrs. Catherine Reilly, while the words of the clause in question can be grammatically construed, in the order in which they occur in the will, to include these very heirs so as to allow them to participate in this share.

(3.) It gives a construction to the will, which, under circumstances perfectly possible to have occurred at the time the will was made, would have rendered the will inoperative; and made the testator die intestate, as to the share in question. The word "children" should be read to include grandchildren.

*E. Spencer Miller*, for appellees.

Mr. Justice STERRETT delivered the opinion of the court, May 5th 1879.

Lewis Ryan died in 1850, leaving three daughters, Ann, Martha and Mary, and five grandchildren who were the children of his deceased daughter Catherine, wife of Philip Reilly. After making specific disposition of a part, the testator gave all the rest, residue and remainder of his property, real, personal and mixed to trustees, with full power and authority to sell, invest and collect the income

and interest thereof; *in trust*, however, to divide the said income and interest into four equal shares or parts; to pay one full and equal part thereof, half yearly, to each of his daughters above named, during life, for her sole and separate use, and the remaining fourth part to his son-in-law, Philip Reilly, for the maintenance and education of his grandchildren above named, until they should severally attain the age of twenty-one years; then in further trust, to pay to each grandchild the principal or capital sum on which he or she had been receiving the income and interest, with the proviso that if any of these grandchildren should die under the age of twenty-one, leaving lawful issue, the share of such grandchild should go to the issue, and if any of them should die under age and without issue, the survivors should take his or her share.     The one-fourth of the residuary estate was thus given, first in trust and in the end absolutely, to the children of Mrs. Reilly, so that in no contingency could the testator's daughters, under the provisions of his will, participate in that part of his residuary estate.     The trusts, as to the other three-fourths, for the benefit of his daughters, were materially different.     After providing as above stated, for the payment of one-fourth of the interest and income to each semi-annually during life, he disposed of the principal or capital sum from which such income and interest were derived, as follows: " from and immediately after the death of either of my said daughters, *in trust*, to pay, assign, transfer and set over the principal sum on which such daughter, so dying, was entitled to receive the income or interest, to such person or persons and for such uses, interests and purposes as such daughter, by any last will or testatment or instrument of writing in the nature of a last will or testament, notwithstanding her coverture, may direct, limit and appoint to receive the same; and for want of any such last will and testament, then to pay the said principal sum to the child or children of such daughter in equal shares or proportions; *but if either of my said daughters shall die without leaving issue, and without any last will and testament, then it is my will and desire that the share or portion of such daughter shall be continued under the same trusts as hereinbefore provided, for the use and benefit of my surviving children in equal proportions, in the same manner as hereinbefore directed as to the residue of my estate.*"

The testator's daughter Martha died in 1865, without issue, and without having exercised the power of appointment with which she was clothed by her father's will, and the present contention has arisen in regard to the proper construction of the italicized portion of the residuary clause above quoted.     The children of Mrs. Reilly, appellants, claim that they are entitled to participate in the share or portion of the residuary estate which was held in trust for their aunt, Martha Ryan; while, on the other hand, the appellees contend that, by the terms of the will, they are excluded, and have no

interest therein; that the principal or capital sum, on which Martha received the interest or income, was continued for the use and benefit of the testator's surviving children, in equal proportions, under the same trusts that are provided for them in the previous part of the residuary clause.

The auditor and the Orphans' Court held that upon Martha's decease, without children and without having exercised the power of appointment as to the principal, the right to receive the income in equal proportions vested in her surviving sisters Mary and Ann, subject to the life-interest of the latter under Martha's will, and that therefore each was entitled to appoint one-half of the principal by will. It appears to us that this is the only construction of which the clause under consideration is fairly susceptible. If the testator had omitted the phrase " for the use and benefit of my surviving children," or had added thereto the words " and grandchildren," or if we were at liberty to construe the word *children* as including *grandchildren*, there would be no difficulty in giving effect to the will in favor of appellants; but there is nothing in the instrument that would justify us in striking out or supplying these words respectively, or in enlarging the meaning of the word *children* so as to embrace *grandchildren*. It is the well-established rule of construction in this state, as well as elsewhere, that the word children in a will does not include grandchildren, unless it appears from the context to have been so intended by the testator, or such meaning is necessary to carry out his manifest intent, neither of which appears to exist in this case. Nor is the meaning of the will rendered so doubtful by antagonistic clauses or the use of ambiguous language as to justify a departure from the ordinary rule, requiring a testamentary paper to be construed according to its natural and ordinary import. If the will contained such clauses, or if such ambiguous language was employed as to render its meaning doubtful, it would be our duty to adopt that construction which would, as nearly as practicable, bring about equality of distribution. But we fail to find in this will any such inconsistency or ambiguity as would justify the application of this principle.

Upon the happening of the contingency, which occurred on the death of Martha, the capital representing one-fourth of the residuary estate was directed to be continued in trust. For whose benefit was the trust continued? The will says, " for the use and benefit of my surviving children." These are both natural and apt disposing words, and the only words in the sentence under consideration that are really descriptive of the beneficiaries. Then follow the words " in equal proportions," indicating how the surviving daughters are to take. Then again when we inquire what was the character of the trust under which Martha's share of the principal was to be continued, the language of the will furnishes the answer, " under the same trusts as hereinbefore provided." The surviving

daughters are thus made the beneficiaries, and the latter words are descriptive of the trust created for their benefit; and the concluding phrase of the sentence, " in the same manner as hereinbefore directed as to the residue of my estate," are further descriptive of the trust and its incidents. These words would seem to indicate that as the original portions of the principal, the income or interest of which his daughters were to receive respectively, were subjected to the power of appointment vested in the daughters, so the quarter of the principal added in equal proportions to the shares of each of the surviving daughters should serve the purpose of increasing their income, and in the end be subject also to the power of appointment before given them respectively.

The difficulties attending the construction contended for by the appellants have been so fully pointed out by the learned auditor that it is unnecessary to add anything thereto. It may be that the testator intended that his grandchildren, the appellants, should, together with his surviving children, be beneficiaries of the continued trust, but if he did, he failed to use language expressive of such intent; on the contrary, we think the language employed evinces a contrary intention.

> Decree affirmed, and appeal dismissed at the costs of the appellants.