## Hoch's Estate.    Leinbach's Appeal.

[Marked to be reported.]

*Will—Intestate laws—Distribution.*

The intestate laws must control questions of distribution arising upon the settlement of estates of testators as well as intestates, unless the testator has clearly provided a different mode in his will.

The act of April 8, 1833, P. L. 316, defines the words " lawful heirs " and furnishes the rule for making distribution among them, which is per capita, if the children of the intestate are living at the death of the ancestor, and per stirpes, if some of the children be living, and others be dead, but have living issue to represent them.

Testatrix directed her estate " to be divided in equal shares to my legal heirs." At her death testatrix left to survive her, two children, and eight grandchildren, issue of a deceased child. *Held* that the estate was to be divided per stirpes into three shares, her children to take two of the shares, and her grandchildren, the third share.

Argued March 1, 1893. Appeal, No. 294, Jan. T., 1893, by Caroline Lienbach and Lydia Hoch, daughters of Hannah Hoch, deceased, from decree of O. C. Berks Co., dismissing exceptions to adjudication. Before STERRETT, C. J., WILLIAMS, McCOLLUM, DEAN and THOMPSON, JJ.

Adjudication of estate of Hannah Hoch, deceased.

From the record it appeared that Hannah Hoch died on March 30, 1891, leaving to survive her, Caroline Leinbach a daughter, Lydia Hoch a daughter, and eight children of Joel Hoch, a deceased son. Her will was as follows:

"I make this my last will. I give devise and bequeath as follows:

"In the first place I devise and bequeath one good bead to Solomon Hoch of Richmond township Berks Co.

"Second all carpets cloth linen and cotton quilts qunce ware stove and all other furneture which is left in the house all of which they due except I give devise and bequeath to my two doughters Caroline and Lydia if any article above mentioned they due not except it shall be publictly sold and devided with the rest of my property in equal shares to my legal hars.

"I appoint Ely Limebach of Bern Township James M. High of Earl and Jacob Hoch of Oley executors of this will."

The amount for distribution, apart from specific bequests, was $10,533.71. The court, BLAND, P. J., distributed the estate per capita in equal shares among the children and grandchildren, on the authority of Thomas v. Hole, Talbot's Cases, 251; McNeilledge v. Galbraith, 8 S. & R. 45; 1 Roper, Leg., p. 157; Bender's Ap., 3 Gr., Pa. 210; Harris's Est., 74 Pa. 452; Dible's Est., 81* Pa. 279; Hicks's Est., 134 Pa. 507; and Thomas's Est., O. C. Phila. Co., 18 W. N. 28, the last case distinguishing Baskin's Ap., 3 Pa. 304, and other cases.

Exceptions to the adjudication were overruled.

*Errors assigned* were dismissing exceptions, quoting them.

*Jefferson Snyder, Geo. F. Baer* and *Philip S. Zieber* with him, for appellants.— The word "heirs" means the persons upon whom the law will cast the estate in case of intestacy: Gutherie's Ap., 37 Pa. 13; Nice's Ap., 50 Pa. 143; Auman v. Auman, 21 Pa. 347; Dodge's Ap., 106 Pa. 220.

The legal sense of the word "heirs" is not modified by the words "in equal shares:" Yarnall's Ap., 70 Pa. 335; Physic's Ap., 50 Pa. 128; Ogden's Ap., 70 Pa. 509; Little's Ap., 117 Pa. 14; Carson v. Fuhs, 131 Pa. 256; Baskin's Ap., 3 Pa. 304; Barnitz's Ap., 5 Pa. 264; Witmer's Ex'rs v. Ebersole, 5 Pa.

458; Walker v. Dunshee, 38 Pa. 430; Ashton's Est., 134 Pa. 390; Wood's Ap., 18 Pa. 481; Ortt's Ap., 35 Pa. 267; Miller's Ap., 40 Pa. 387; Krout's Ap., 60 Pa. 380; Person's Ap., 74 Pa. 121; Osburn's Ap., 104 Pa. 637.

*Christian H. Ruhl, Daniel Ermentrout* with him, for appellees.—There is by testator's will a testamentary disposition of decedent's whole estate: Raudenbach's Ap., 87 Pa. 54; East v. Cook, 2 Ves. Sr. 30; Ferry's Ap., 102 Pa. 210; Jacobs's Est., 27 W. N. 365; Weidman's Ap., 42 Leg. Int. 338.

The intention of testatrix, gathered from the language of the whole will, is paramount, and a construction of her will must be in conformity and subordinate to her expressed intent.    The intent of the testatrix being clearly expressed, an argument based upon the technical import of the word "heirs" has no application: Reck's Ap., 78 Pa. 435; Fetrow's Est., 58 Pa. 427; Middleton's Ap., 103 Pa. 94.

Words importing equality of division, unmodified by other expressions in the will, have always been held to import a per capita distribution: 2 Jarman on Wills, 756; Butler v. Stratton, 3 Bro. C. C. 367*; Welsh v. Crater, 32 N. J. Eq. 177; McNeilledge v. Galbraith, 8 S. & R. 45; Thomas's Est., 18 W. N. 28; Harris's Est., 74 Pa. 452; Dible's Est., 81* Pa. 279; Hicks's Est., 134 Pa. 507; Bender's Ap., 3 Grant, Pa. 210; Baskin's Ap., 3 Pa. 304; Alston's Est., 18 Pitts. L. J., N. S. 184.

Where the rule in Shelly's Case is applied, the second takers never take immediately under the will or deed, but by the law of descent, and through their ancestor, the nominal life tenant, who, by force of the word "heirs," has taken an inheritable estate.    When applied, it is always to a grant or devise of real estate, and not to a gift or bequest of personal property: Eby's Ap., 84 Pa. 245; Patterson v. Hawthorn, 12 S. & R. 113; McGill's Ap., 61 Pa. 46.

OPINION BY MR. JUSTICE WILLIAMS, May 1, 1893:

The testatrix intended to dispose of her entire estate by her will.    The words she has employed show her purpose, and are sufficient to make a valid testamentary disposition of her property.    The debatable question raised in the court below, and

on this appeal, is over the mode of distribution provided for.
The learned judge of the orphans' court held that the language
of the will required a per capita distribution between two liv-
ing children of the testatrix, and eight grandchildren, the issue
of a deceased son. By this mode of distribution the estate
would be divided into ten equal parts. The two surviving
children of the testatrix would take each one tenth, and the
eight children of the deceased son would take each one tenth.
He accordingly decreed distribution per capita among children
and grandchildren in equal shares. The appellants contend
that the distribution should be per stirpes. This mode would
divide the estate into three equal parts corresponding with the
children of the testatrix, of which each surviving child would
take one, and the living issue of the deceased child would take
the other, as the representatives of their father, and divide it
among themselves share for share alike. This would have been
the course of distribution under the intestate laws. The act of
April 8, 1833, P. L. 316, provides that where an intestate leaves
" descendants in different degrees of consanguinity to him, the
more remote of them being the issue of a deceased child, grand-
child or other descendant, each child of the intestate shall re-
ceive such share as such child would have received if all the
children then dead leaving issue had been living at the death
of the intestate." In other words, such an estate must be
divided into as many shares as there are children living, and
children dead leaving issue to represent them. These shares
must be divided according to the words of the same statute in
the following manner : " In every such case the issue of such
deceased child, grandchild, or other descendant shall take by
representation of their parents respectively, such share only
as would have descended to such parent at the death of the
intestate," if such parent had then been living. The intestate
laws therefore define for us the words " lawful heirs " and
furnish the rule for making distribution among them. This is
per capita, if the children of the intestate are living at the death
of the ancestor. It is per stirpes, if some of the children be
living, and others be dead, but have living issue to represent
them ; so that the distribution is to " descendants in different
degrees of consanguinity " to the intestate. We follow the rule
of the intestate laws in all cases when the testator has not

clearly adopted a different one. It must be applied in this case unless the will before us requires us to substitute for it a mode of distribution laid down by the testatrix.

The words in the will that refer to the distribution of the estate are, " to be divided in equal shares to my legal heirs." This makes it necessary to inquire first who the legal heirs of Mrs. Hoch were. The facts are in no doubt. There are two children of the testatrix, and eight grandchildren, issue of a deceased son. They stand in different degrees of consanguinity to the testatrix, and, under the intestate laws, the eight grandchildren represent their deceased father and, together, stand in his place. Looked at with reference to distribution under the intestate laws, the heirs are thus seen to be three, one of whom is represented by eight children. The next question is whether the testatrix shows a purpose to disregard the distribution provided for by the intestate laws and substitute a method of her own. The only words on which this can be affirmed are the words " in equal shares." But this is the legal rule. Her estate if she had made no will would have been parted into three equal shares. Each of her living children would have taken one of these. The third would have gone to the living issue representing her deceased son, as his equal share. The share would then have been subdivided into eight equal parts and distributed among his heirs, each of whom would have taken through him. Now if the testatrix had directed her estate to have been divided in equal shares among her descendants, these words would have placed them all in one class and provided a per capita distribution among them. So if she had said " I want my estate to be divided among my children and grandchildren in equal shares." But the distribution she directed was among her " legal heirs." This refers their ascertainment to the laws of the state. She does not undertake to define her meaning so as to change the legal rule, but expressly adopts it. Her further direction is that among her legal heirs the distribution shall be made in equal shares. This also is the rule of the law. It would not be profitable to enter upon an examination of the cases cited in support of the rule adopted by the orphans' court. There is a line of well-considered cases beginning with Baskin's Appeal, 3 Pa. 304, which we regard as settling the law in accordance with the views now expressed,

and it is our purpose to adhere to the rule. The intestate laws must control questions of distribution arising upon the settlement of estates of testators as well as intestates, unless the testator has clearly provided a different mode in his will.

The decree of the orphans' court is reversed and the record remitted, that the distribution may be made in accordance with this opinion.