## Mifflin's Estate.

*Wills—Construction—Legacy—Lapse—Death in lifetime of testator—Trust and trustees—Intention—Gift to class—Contingent gift.*

1. Where the intent of a testator, and by that is meant his actual intent, can be fairly gathered from his words, the fact that another testator had used the same words with a different meaning is of no avail. Neither precedents nor rules of construction can overcome the testator's intent.

2. If an original gift by will be, not to a class generally, but to such of the class as survive the testator, a contingent gift grafted thereon in case of the death of any of them can only mean death happening after the death of the testator.

3. Where a testatrix gives her residuary estate to "such" of her four nephews, naming them, as may be living at the time of her death, and further directs that the share of one of them shall be held in trust, the trust so created is contingent upon such nephew surviving the testatrix. If he dies in her lifetime, the residuary estate will be divided among the three surviving nephews.

Argued January 14, 1924. Appeal, No. 163, Jan. T., 1924, by Barrington Wight, a legatee, from decree of O. C. Phila. Co., Jan. T., 1922, No. 189, dismissing exceptions to adjudication, in estate of Lily Sturgis Mifflin, deceased. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Exceptions to adjudication of GEST, J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed in opinion by GUMMEY, J., to which LAMORELLE, P. J., filed a dissenting opinion. Barrington Wight, a legatee, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Chester N. Farr, Jr.,* with him *Albert B. Weimer,* for appellant.—The residuary estate should have been awarded in equal third parts to the three surviving nephews as the gift was to such of the four nephews as might be living at the time of testatrix's death, and, as Danforth was not then living, the contingency did not happen, and there is nothing on which the trust in case he survived could take effect.

*Caspar W. B. Townsend,* of *Townsend, Elliott & Munson,* for appellees.—A remainder following on a life estate is good although the life estate failed because the life tenant predeceased the testatrix: May's App., 41 Pa. 512.

Other cases which have held that the death of an immediate legatee in the lifetime of testator served to accelerate the remainder interests where there was a specific bequest over are Bruner's Est., 14 Pa. Dist. R. 124; Crawford's Est., 18 Pa. Dist. R. 594; Janney's Est., 28 Pa. Dist. R. 24; Roberts's Est., 2 D. & C. 347; Fahnestock's Est., 147 Pa. 327.

OPINION BY MR. JUSTICE SCHAFFER, February 18, 1924:

Testatrix in her will provided, "All the rest, residue and remainder of my estate, whether real or personal, I give, devise and bequeath to such of my four nephews Danforth Phipps Wight, Edward P. Wight, George Richards Wight, and Barrington Wight, as may be living at the time of my death, and the descendants then living of any of them that may be then deceased; per stirpes, upon the principal of representation, to have and to hold the same to them, their heirs and assigns forever, as

tenants in common and not as joint tenants; the share of Danforth Phipps Wight to be held by my executors and trustees, in trust, to invest the same in good and safe securities, not confining my trustees and executors to what are known as legal investments, and to pay the income therefrom in equal quarterly installments unto my said nephew, Danforth Phipps Wight, for and during the term of his natural life. In further trust, upon his death to pay, assign, transfer and set over the principal of his said share unto such of his brothers as may then be living and the descendants then living of such of his brothers as may then be dead, in equal shares, per stirpes, upon the principle of representation." Danforth, Edward and George were brothers, Barrington was their cousin, the son of another brother of testatrix.

Danforth died in the lifetime of testatrix. The question for decision is whether the residuary estate shall be distributed in equal shares to the three surviving nephews or whether the portion of the deceased nephew shall be given to his two surviving brothers, Edward and George, increasing their shares from one-third to three-eighths.

The auditing judge and a majority of the orphans' court, the president judge dissenting, held the share of Danforth did not lapse, that it was saved from so doing by the trust created for him and awarded a three-eighths interest to his two brothers and a one-quarter interest to the other surviving nephew Barrington Wight, who brings this appeal. The reason for the court's decision was thus summed up by the auditing judge: "All surviving except Danforth Phipps Wight, whose share was given in trust for him for life, with remainder to such of his brothers as might be living at his decease. His death accelerated the remainders and as it appears that his surviving brothers now are Edward P. Wight and George Richards Wight, they are entitled to this share," holding that the gift over took effect notwithstanding Danforth's death in the lifetime of the testatrix, citing in support of

his conclusion: Martha May's App., 41 Pa. 512; Fahnestock's Est., 147 Pa. 327; Bruner's Est., 14 Pa. Dist. R. 124; Crawford's Est., 18 Pa. Dist. R. 594, and Janney's Est., 28 Pa. Dist. R. 24.

This is the sort of will that is construable from its language alone. As we said in Long's Est., 270 Pa. 480, 487, "When the intent of the testator, and by that is meant his actual intent, can be fairly gathered from his words, the fact that another testator had used the same words with a different meaning is of no avail. Neither precedent nor rules of construction can overcome the testator's expressed intent." Tested by this standard of the testator's actual expressed intent as manifested from the words of the will, we find that the devise was to "*such* of my four nephews [naming them] as may be living at the time of my death" and such an one Danforth was not, as he was not alive at the time of her death. As was said by the learned President Judge of the court below in his dissenting opinion, "The gift here was not to four nephews by name, but to such of four named nephews as should be living at the time of the death of testatrix" and therefore, "as his share never existed, those who succeeded upon his decease to his share, necessarily take nothing; ......those who answer the description or designation of 'such of my four nephews' were the three named living nephews." While this may not be strictly speaking a gift to a class, the reasoning which applies where the first takers are a class is certainly most persuasive. "If the original gift be, not to the class generally, but to *such* of them only as survive the testator, a contingent gift engrafted thereon in case of the death of any of them can only mean death happening after the death of the testator": 2 Jarman on Wills, 6th ed., p. 705.

The decree of the court below is reversed and it is directed to enter a decree making distribution to Edward P. Wight, George Richards Wight and Barrington Wight in equal shares; costs to be paid out of the residuary estate of the testatrix, Lily Sturgis Mifflin.