Lennig's Estate.

*W. W. Montgomery (Roberts & Montgomery* with him), for Maude L. Hawkes, Elise J. de B. Macauley and Louie L. Rowland, exceptants,

*Joseph W. Henderson* and *Francis Rawle,* for Mary Eleanor Arnois and Charles L. Arnois, contra.

*R. M. Remick (Saul, Ewing, Remick & Saul* with him), for Charles L. Thudicum, contra.

GEST, J., April 17, 1929.—The narrow question of construction arising in this case is very susceptible of argument and was ably argued. The testator, who wrote his own will, with the natural result, has designated as his beneficiaries "my legal descendants then living the Sons and daughters of my daughter Williamina Thudicum and Joyeuse Arnoys, my sons Nicholas and John B. Lennig and none others," and the enigma, the answer to which was buried with the testator thirty-eight years ago, is whether the word "descendants" enlarges the words "sons and daughters," or whether the latter phrase restricts the meaning of the former. Tne "descendants" of a testator mean, in plain English, his issue *ad infinitum;* "sons and daughters" have a meaning equally plain, so that the clause is inconsistent and ambiguous. Our task is to harmonize these inconsistencies and extract from the will as a whole the

real intention of the testator. The usual canon of construction is that a will must be construed from its four corners, and if the will is four-square, the problem is generally rather simple, but if the will is an irregular polygon, the difficulty is greater.

As it has been often said, the word "children" will not include "grandchildren" unless this appears clearly to have been the meaning of the testator or unless the will would be otherwise inoperative, Dickinson *v.* Lee, 4 Watts, 82; Hallowell *v.* Phipps, 2 Wharton, 376; Castner's Appeal, 88 Pa. 478, which are referred to in Williamson's Estate, 3 D. & C. 1, affirmed 82 Pa. Superior Ct. 444, where a similar difficulty arose as between grandchildren and great-grandchildren, and we can only solve the problem by consideration of the will as a whole, which the Auditing Judge has carefully analyzed in the light of testator's circumstances and knowledge of his family. We think that the expression "and none others" is not used by the testator to qualify the term "sons and daughters," but to make it clear that the descendants of his other daughter, Ottilia, were not included in the gift, as it appears from the will itself, and it is indeed conceded, that Ottilia had displeased her father, the testator, by her marriage, so that he intended to deprive her and her children from all participation in his estate beyond the comparatively trifling provision he expressly made for her children.

We need not elaborate the argument of the Auditing Judge, except to say that we regard as very significant the testator's direction that the participants in his residuary estate should claim and prove their interest within one year after three months' advertisement. As the Auditing Judge points out, this could not have been intended merely for the ascertainment of grandchildren, though we need not lay any special stress on the Biblical and poetical use of the expression "sons and daughters" as equivalent to descendants *ad infinitum.* It was indeed suggested in argument by counsel for the children of John B. Lennig that the gift to descendants thus interpreted would include not merely the living grandchildren but also their living issue, all being legal descendants then living of the testator, and who appear to be fourteen in number altogether, but we think this would be a very strained construction. To be sure, it has been held in some cases that in a gift to persons *nominatim* or as a class and their issue, the issue may take concurrently, or, as it is sometimes expressed, in competition with their living parents. The presumption is against such an unlikely meaning, if there is even a faint glimpse of a different intention, and, without discussing the numerous cases in other jurisdictions, we refer merely to Arnold's Estate, 22 Dist. R. 1, and Shoch's Estate, 30 Dist. R. 367; 271 Pa. 165. We are of opinion that the Auditing Judge correctly held that the parties entitled were the living children of the testator's four children named and the two children of Alexander Arnois, the deceased son of Joyeuse. Joyce's Estate, 30 Dist. R. 840, 273 Pa. 404, is very much in point.

But we are of opinion that the Auditing Judge was in error in awarding distribution *per stirpes* among all the participants. The gift is to "my legal descendants then living the sons and daughters of my daughter Williamina Thudicum and Joyeuse Arnoys, my sons Nicholas and John B. Lennig and none others." The meaning of the latter phrase has been already discussed. The gift, however, is to a class, all of whom stood in the same plane, being all grandchildren of the testator. The gift is to them, share and share alike, and, in our opinion, the case is governed by Brundage's Estate, 36 Pa. Superior Ct. 211, rather than by Sipe's Estate, 30 Pa. Superior Ct. 145, which was relied upon by the Auditing Judge. In the latter case, the gift was "to my brother

Daniel, to the children of Elizabeth my sister, and to the children of my sister Louisa, and to the children of Michael (another brother) share and share alike," thus indicating an intention to define several different classes of beneficiaries. Daniel survived and had no children, Elizabeth had seven children, Louisa had five and Michael had two, and the distribution was made *per stirpes*. In Brundage's Estate, however, the gift was "to my brothers' and sisters' children in equal proportions share and share alike," and the court held that the estate should be divided equally among all the children of his brothers and sisters, who were described as a single class, all of them being the same relationship to the testator. When, however, we come to consider the two children of Alexander Arnois, who, if he were living, would be entitled to one share, we are of opinion that they represented the interest of their father and should divide it between them in analogy to the statute of distribution. While all the numerous cases on the subject differ to some extent in their phraseology, we think this result agrees with the views of the Supreme Court in Minter's Appeal, 40 Pa. 111; Hoch's Estate, 154 Pa. 417, and Wootten's Estate, 253 Pa. 136. See, also, Baizley's Estate, 7 D. & C. 1.

This construction of the will, we think, gives due weight to all of its phrases. The sons and daughters of the testator's four children named, being all his grandchildren now living, take *per capita*, share and share alike, which was the testator's primary intention, while the legal descendants now living of the deceased grandson, Alexander, take his share *per stirpes*, reaching a result which is in harmony with the phraseology of the will and in analogy with the intestate law. The Auditing Judge authorizes us to say that he concurs in this modification of his adjudication.

The distribution of the residuary estate should, therefore, be awarded onefifth to each of Maude L. Hawkes, Elise J. de B. Macauley, Louie L. Rowland and Charles L. Thudicum and one-tenth to Mary Eleanor Arnoys (or Arnois) and one-tenth to Charles L. Arnois. To this extent, the exceptions are sustained and all others are dismissed.

Counsel will prepare and submit to the Auditing Judge for his approval a schedule of distribution in accordance with this opinion.

LAMORELLE, P. J., dissenting.—Having provided for his widow, his children and certain of his grandchildren from a trust of his residuary estate, testator bequeathed a large part of such residuary estate, upon the termination of the trust, for enumerated charitable and educational purposes. Evidently realizing that these gifts might not exhaust the estate, he thus disposed of the excess, if any:

"Any balance remaining upon the completion of the aforenamed devices, I direct and order my Trustee to distribute and pay over Share and Share alike amongst and to any of my legal descendants then living the Sons and daughters of my daughter Williamina Thudicum and Joyeuse Arnoys, my Sons Nicholas and John Bouligner Lennig and none others. . . ."

The trusts have terminated and there being a "balance," the Auditing Judge, in making distribution, includes as distributees two great-grandchildren, Eleanor Mary Arnois and Charles Lennig Arnois, issue of Alexander Arnois, a deceased son of a deceased daughter. He would have taken if alive, but he died in 1920.

Exceptions to this ruling are dismissed in the majority opinion.

I find no warrant for such construction of the will, and I, therefore, file this dissent.

I know of no case where "sons and daughters" have been held to mean anything other than sons and daughters, nor do I know of any case where, in a gift to living children, grandchildren have been allowed to participate along with them, except in a few isolated instances, wherein the context was such that escape from such decision was practically impossible.

In Page's Estate, 227 Pa. 288, Judge Penrose (at page 289), speaking for this court, enunciates the well-known principle: "Campbell's Estate, 202 Pa. 459, was not intended to change the well-settled principle of interpretation that, in the absence of evidence of a contrary intention afforded by the will itself, a gift to 'children' will not be understood as including any more remote class of descendants."

In the case cited there was a trust of two-sixths of the residue for a nephew, James F. Breuil, for life, and upon his decease the *corpus* was to be distributed among his children living at the time of his death. James F. Breuil had two sons; one of them died in the lifetime of his father, leaving a child, great-grandnephew of decedent. He claimed one-half of the fund on the theory that "children," as used by testator, included "grandchildren." In deciding against his contention, Judge Penrose says (at page 289): "The estate of those entitled at the termination of the life estate is contingent, purely. The gift is to the 'children' of the first taker living at the time of his death; and being his 'child' is no less an integral part of the description of the person then becoming entitled than is the fact of being then alive."

His opinion was adopted by the Supreme Court.

Unless, therefore, in the instant case the context shows a broader intention, the present case is ruled by Page's Estate, *supra.*

What context have we? Following so much of the clause above quoted, the will continues: ". . . and in default of any such claiming and proving their interest within One Year after three months' Summons in Six of the principal News Papers of this City and New York, then the said balance to be divided and paid Share and Share alike one half to the Trustees of the University of Pennsylvania to be invested for the use of the Free Scholarship Fund aforenamed, the other half to be divided one half to the use of the German Hospital and the balance to the Pennsylvania Hospital of Philadelphia."

To my mind, this mandate is not only insufficient on the facts of the case to justify the construction that it showed an intention to embrace grandchildren, but such construction is misapplied, because in the very clause itself testator used the words "*any such* claiming. . . ." "*Any such*" can have but one meaning, and that is: "Sons and daughters of my daughter Williamina Thudictum and Joyeuse Arnoys, my Sons Nicholas and John Bouligner Lennig and none others. . . ." The mere fact that testator desired that if none of his grandchildren could be located within a given time, such shares as they would otherwise take should pass to certain charities, etc.—the first object of his bounty, so far as the major portion of his residuary estate was concerned—is not a compelling reason why the class should be enlarged by adding those not mentioned, and, therefore, presumably not to be included.

I regard the words, "the Sons and daughters," etc., as in apposition with the expression "my legal descendants then living. . . ." I fail to see that either phrase is intended to or does restrict the other; they are not in conflict. The gift is to my legal descendants, being the living children of four of my children. Arnois, a child of the daughter, Joyeuse, could not take, for when the trust finally ended he was dead, and on the day of his death he effaced himself from the class, which class was limited to *then* living descendants, sons and daughters. How, then, may his two children (great-grand-

children of testator) take? They cannot take through their father; his rights ended with his death; they cannot take by substitution, for this is a class legacy. Nowhere in testator's will is there any reference to great-grand-children; he had in contemplation his wife, his children, his children's "sons" and "daughters," the charities, the educational scheme, and no more. And of the many descendants testator might possibly have, this "balance" was to be distributed in terms among living sons and daughters of four of his children. Neither language nor intention could be plainer nor more exact. It is, of course, possible that by the words "none others" he meant no more than to exclude the "sons and daughters" of his deceased daughter who married William Fullerton; it is, however, equally possible that the obvious meaning of these words should prevail, i. e., as indicating distribution among certain specified sons and daughters to the exclusion of more remote descendants; the context surely justifies such conclusion; but ignoring entirely the words "and none others," I find no warrant for including descendants other than those in so many words designated. The doctrine or principle of "potential intestacy" has no application in the instant case. Wherein there are con-tingent remainders, with no limitation over, there is always the possibility of intestacy. But, if in fact, upon the death of the testator or at the time fixed for distribution, it is ascertained that no actual intestacy results, such possi-bility, to wit, that it might have existed, does not justify a distribution into which this possibility enters as a factor in determining who shall take. More-over, in the instant case there is a limitation over, and because of such fact, in no event could there be an intestacy.

In short, I find nothing either contradictory or doubtful in this particular dispositive clause, and, therefore, nothing requiring interpretation or con-struction; and for these reasons I am of opinion that testator's expressed intention should govern.

I cite an authority which to me, by analogy, seems to be directly in point: Mifflin's Estate, 3 D. & C. 638; 279 Pa. 429. Testator had given his residuary estate unto "such of my four nephews," by name, "as may be living at the time of my death, . . ." and on the death of one named nephew it was pro-vided that his share should be held in trust for life, with remainder at his death to such of his brothers as might then be living, and the issue of such as might then be dead, per stirpes. Three nephews survived testator; but the one nephew whose brothers took on his death died in testator's lifetime. This court awarded one-fourth to these brothers, despite the fact that as this brother did not survive testator he took nothing, and, therefore, nothing could pass from him. In reversing, Mr. Justice Schaffer said (at page 432): "If the original gift be, not to the class generally, but to such of them only as survive the testator, a contingent gift engrafted thereon in case of the death of any of them can only mean death happening after the death of the tes-tator: 2 Jarman on Wills (6th ed.), 705."

"This is the sort of will that is construable from its language alone. As we said in Long's Estate, 270 Pa. 480, 487: 'When the intent of the testator, and by that is meant his actual intent, can be fairly gathered from his words, the fact that another testator had used the same words with a different meaning is of no avail. Neither precedent nor rules of construction can overcome the testator's expressed intent.' Tested by this standard of the testator's actual expressed intent as manifested from the words of the will, we find that the devise was to 'such of my four nephews (naming them) as may be living at the time of my death,' and such an one Danforth was not, as he was not alive at the time of her death:" Mifflin's Estate, 279 Pa. 432.

To paraphrase, testator gave this balance to such of his *living* descendants as are sons and daughters of his four named children: and therein is the analogy. Those only of the sons and daughters who are alive when the trust terminates may take. The one son (child of Joyeuse) was not then living; nothing passed to his issue because he was not a member of the specified class—and there was no independent gift, nor one by substitution.

No thought of great-grandchildren appears anywhere in the will. Why, then, should we depart from well-settled principles to benefit great-grandchildren at the expense of sons and daughters of children, to whom alone testator says he intends this "balance" to be given? His intention was to limit the class, not to enlarge it. Why strive for a presumed intent; sons and daughters of children are liable to migrate and to disappear, as well as more remote issue.

I would divide the fund among the four living sons and daughters of the four children, *per capita*, and dismiss all exceptions inconsistent with this ruling and sustain all others.