In the matter of the petition of ANNIE CUNNINGHAM for a writ of *habeas corpus.*

[Filed February 23d, 1901.]

A mother applied for a writ of *habeas corpus* to recover the custody of her daughter, sixteen years old, from the House of the Good Shepherd, to which she had agreed to send her for a year. The year having expired, and the daughter having expressed a desire to remain where she was till she had got more strength to resist temptation, and the mother only proposing to put her out to service in nearly the same neighborhood in which she fell into immoral ways—*Held,* that, whether the proceeding were regarded as a strict *habeas corpus* proceeding or a chancery one, in which the welfare of the girl was the controlling issue, all the court would do would be to free her from restraint, if any existed.

*Mr. Henry H. Snedeker,* for the petitioner.

*Mr. William J. Kearns,* for the respondent.

Cunningham's Case.

Stevens, V. C.

The material facts are these: The subject of the writ is Henrietta Cunningham, a girl who was sixteen years old last November. Her father, nominally a Roman Catholic, does not live with or support his wife, though he visits her occasionally. Her mother, a Protestant, supports herself and three young children by washing. Henrietta, as her mother admits, got beyond her control when eleven years old. At that age she left school, against her mother's will, and was then employed in a kindergarten and afterwards at general housework. She fell into immoral ways, and was twice arrested. On the occasion of the second arrest, on November 27th, 1899, she was brought before Justice Bray, of Orange, who told the petitioner that unless she could find a suitable place where Henrietta could be looked after, he would commit her to jail, with a recommendation that she be sent to the reform school. The petitioner, not being able to find any such place over night, the justice, on the day following, told her that unless she was willing to send her daughter to the House of the Good Shepherd, a Roman Catholic institution, he would send Henrietta to jail. Her mother agreed that she should go to the House of the Good Shepherd for a year. While there she was baptized as a Roman Catholic and has adopted that faith. She has been taught to work on a machine and to make shirts. At the expiration of the year she remained in the institution and is there still. She was called as a witness, and in answer to the question, "Why is it you don't wish to go back to your mother?" she said:

"Because my conscience won't allow me. I don't want to fall again. I want to stay in the House of the Good Shepherd one year more at least and then I shall be strong enough for me to get along, and if I go out I shall fall again. I understand now that my life is wrong. I have learned that since I have been in the House of the Good Shepherd."

Her mother testifies that she desires to take her out and get her domestic employment in the same town in which she fell.

It seems to me perfectly obvious that all that the court ought to do in the case is to free her from restraint, if any restraint exists. And precisely the same result will be reached whether

the proceeding be regarded as a strict *habeas corpus* proceeding; or as one appealing to the chancellor as the representative of the state, the ultimate guardian of all infants.

If the case be regarded as a *habeas corpus* proceeding merely, then the rule stated in *State* v. *Stigall, 2 Zab. 286*, applies: "When a child is brought up on *habeas corpus,* if of sufficient age and discretion, the court will only ascertain whether the child is under restraint, and if so, will merely make an order setting him at liberty to go where he chooses." By a long line of cases it has been settled in England that the age of discretion in the case of a girl is sixteen years. *In re Agar Ellis, 24 Ch. Div. 317, 326.* I see no reason why the age of sixteen should not, in the absence of satisfactory evidence to the contrary, be regarded as the age of discretion here, but "the extent of the mental development" will be the controlling factor (*Richards* v. *Collins, 13 Stew. Eq. 287*), and cases will doubtless arise in which the court will transfer to parents, having the clear legal title, the custody of girls over that age, and refuse it in the case of girls under that age. *State* v. *Baird, 4 C. E. Gr. 481, 482.* And there is a broad distinction in the adjudged cases between those in which the parent has both the right to the custody and the custody itself (as in the *Agar Ellis Case*), and some one is seeking to deprive him of that right, and those in which the parent, having the right, is seeking to recover the possession from others. It is to the latter class of cases that the rule above quoted from *State* v. *Stigall* is applicable. The case in hand comes under this rule. The petitioner is seeking to recover the custody of a girl who possesses both the requisite age and the requisite intelligence to make an election. In *State* v. *Stigall* the contest was between the father and the mother, but the same rule applies where it is between the parent and a stranger. *Rex* v. *Smith, 2 Str. 982; In re Shanahan, 20 L. T. 183; Queen* v. *Gyngall, 2 Q. B. Div. 232 (1893)* ; *In re Lyons,* referred to in *10 Ch. Div. 65.* In *Richards* v. *Collins, supra,* the controversy was between the parents and a maternal aunt, but the precise point here presented did not arise, as the girl was only twelve years old, and the case was decided against the parents on equitable grounds merely.

The authorities cited seem to me to be a complete answer to the argument principally urged by petitioner's counsel, namely, that the petitioner has a *legal title* to the possession of her child, and that she may enforce that title by compulsory process, whether, in point of fact, the child be or be not under illegal restraint.

If the proceeding be viewed as a chancery one, in which the welfare of the girl is the controlling consideration, then it appears to be plain that she should be allowed to remain where she is. Her mother's circumstances are such that Henrietta must support herself. Her mother proposes to do what is probably the only thing she can do—put Henrietta out to service. But she fell before, while she was at service, in a perfectly respectable family, and I cannot think it will conduce to her permanent reformation to expose her, at her age, to the same temptations in very much the same neighborhood. No doubt the family willing to receive her will do what it can to guard her, but she will still be near her former companions, and absolute supervision of all her movements out-of-doors is impracticable. I will, if counsel desire, examine her further as to her freedom from restraint, but her wishes have been expressed so clearly and in so many ways that it seems unnecessary.

I have decided this case on the assumption that the father's right, by reason of his alleged abandonment of his family, is to be subordinated to that of the mother, and that his wish that his daughter should remain where she is should not be taken into account. I do not wish to be understood as expressing any opinion on this subject.