OZRO G. AUGER *et al.*

*v.*

ROBERT L. TATHAM *et al.*

*Opinion filed June 19, 1901—Rehearing denied October 8, 1901.*

WILLS—*when persons designated "heirs-at-law" do not take per stirpes.* Under a will bequeathing to "the heirs-at-law of Lucy Auger, deceased," and other persons designated by name, "each the sum of twenty-five thousand ($25,000) dollars," and a codicil increasing the bequests to "the heirs-at-law of Lucy Auger, deceased," and other named legatees, from $25,000 "to the sum of $50,000 each, said sum of $50,000 to be paid to each of the persons named," the heirs-at-law of Lucy Auger, deceased, will take *per capita* and not *per stirpes,* where there is no latent ambiguity and nothing to indicate that the word "each" should be given less than its usual significance.

BOGGS, J., dissenting.

*Auger* v. *Tatham,* 92 Ill. App. 194, reversed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

SAMUEL W. NORTON, and JOHN S. MILLER, for plaintiffs in error:

In the construction of wills the intention of the testator is the criterion of interpretation; and this intention is to be ascertained from the language of the will itself,

—not from speculation of what the testator may be supposed to have intended. Schouler on Wills, (ed. of 1892,) par. 462; *Blatchford* v. *Newberry,* 99 Ill. 11; *Bingel* v. *Volz,* 142 id. 214; *Blanchard* v. *Maynard,* 103 id. 60; *Illinois Land Co.* v. *Bonner,* 75 id. 315.

In the case at bar the conditions as to family, property, degrees of relationship and friendship are similar to those presented in the per capita cases, in none of which have such considerations been given weight against the wording of the will. *Blackler* v. *Webb,* 2 P. Wms. 383; *Hyde* v. *Cullen,* 1 Jur. 100; *Payne* v. *Webb,* L. R. 19 Eq. 26; *Houghton* v. *Bell,* 23 Can. Sup. 498; *Richards* v. *Miller,* 62 Ill. 417; *Barber* v. *Railway Co.* 166 U. S. 83; *King* v. *Ackerman,* 2 Black, 408.

Where the will does not furnish the motive of the testator in the distribution of his estate the law does not permit the court to supply one. *Brownfield* v. *Wilson,* 78 Ill. 467; *Heuser* v. *Harris,* 42 id. 425; *Taubenhan* v. *Dunz,* 125 id. 524; *Nieman* v. *Schnitker,* 181 id. 400; *Condell* v. *Glover,* 56 Ill. App. 107; *Morgan* v. *Grand Prairie Seminary,* 70 id. 576.

The word "each" is the decisive controlling word in the clauses to be construed. Its force and effect is to distribute the group described as "the heirs-at-law of Lucy Auger, deceased," into individuals, as if each one were mentioned by name. 10 Am. & Eng. Ency. of Law, (2d ed.) 392; *Collins* v. *Prosser,* 3 D. & R. 112; *Middletown* v. *McCormick,* 3 N. J. L. 92; *Costigan* v. *Lunt,* 104 Mass. 217; *Martin* v. *Mercer University,* 98 Ga. 320; *Penny's Estate,* 159 Pa. St. 346.

Words in general are to be taken in their ordinary grammatical sense, unless a clear intention to use them in another can be ascertained. Jarman on Wills, rule 16; *Roberts* v. *Roberts,* 140 Ill. 345.

Where a gift is made to a number of individuals mentioned by name and a number of other individuals described as a class, those included within the class take as if each one were designated by name. *Blackler* v. *Webb,*

2 P. Wms. 383; *Payne* v. *Webb*, L. R. 19 Eq. 26; *Allender* v. *Keplinger*, 62 Md. 7; *Allen* v. *Allen*, 13 S. C. 512.

The words "the heirs-at-law of Lucy Auger, deceased," are words of description, only. They indicate the persons who are to take, but not the manner of taking. The persons so described, when ascertained, take as individuals. *Ward* v. *Stow*, 17 N. C. 509; *Dukes* v. *Faulk*, 37 S. C. 255; *DeCaumont* v. *Bogert*, 43 N.Y. Supp. 382; *Bisson* v. *Railway Co.* 143 N.Y. 125; *Walker* v. *Webster*, 95 Va. 377; *Bodine* v. *Brown*, 42 N.Y. Supp. 202; *Everett* v. *Carman*, 4 Redf. 341; *Best* v. *Farris*, 21 Ill. App. 49; *Copeland* v. *Copeland*, 64 id. 100; *McCartney* v. *Osburn*, 118 Ill. 403.

WILSON, MOORE & MCILVAINE, for defendants in error:

The "heirs-at-law of Lucy Auger" take as a class the same legacy as is given to the persons named in the seventh article of the will and the first article of the codicil. *Lachland's Heirs* v. *Downing's Exrs.* 11 B. Mon. 32; *Raymond* v. *Hillhouse*, 45 Conn. 467; *Howlett* v. *Howlett*, 12 Leigh, 350; *Gillion* v. *Underwood*, 3 Johns. Eq. 100; *Fisher* v. *Skillman*, 18 N. J. Eq. 229; *Rex* v. *Williams*, 1 Dev. 3; *Spivey* v. *Spivey*, 2 Ired. 100; *Lyon* v. *Acker*, 33 Conn. 222; *Kelley* v. *Vigas*, 112 Ill. 242; *Rowland* v. *Gorsuch*, 2 Cox's Eq. 187; *Collier* v. *Collier*, 3 Rich. Eq. 555; *Balcum* v. *Haynes*, 96 Mass. 205; *Bassett* v. *Granger*, 100 id. 348; *Richards* v. *Miller*, 62 Ill. 417.

The beneficiaries are in the testator's mind, not as individuals, but as a body or class. *Vincent* v. *Newhouse*, 83 N.Y. 505.

When the word "heirs" is used in a will, and there are no other words to control the presumption, the legal inference is that it is *nomen collectivum*. *Clark* v. *Lynch*, 46 Barb. Ch. 68.

There is a broad distinction between the use of the word "children" and the word "heirs" in a will. When the latter word is used they take by representation, *per stirpes*. *Balcum* v. *Haynes*, 96 Mass. 205; *Kelley* v. *Vigas*, 112 Ill. 242; *Richards* v. *Miller*, 62 id. 417.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This is a proceeding in chancery to obtain a judicial construction of certain clauses in the will of Albert A. Munger, deceased. The testator made his will October 10, 1893, and a codicil thereto April 8, 1897, and died August 26, 1898. The estate devised amounted to $2,500,000. The part of the will involved in this controversy provides as follows:

"*Seventh*—I hereby give and bequeath unto Alexander A. McKay, George A. McKay, Cornelia Thomas, Isadore G. Munger, the heirs-at-law of Lucy Auger, deceased, Arthur Munger, Gussie Munger Evans, Kate Munger Honn (sister of said Arthur Munger) and Charles Munger, son of Cheney Munger, each the sum of twenty-five thousand ($25,000) dollars, to be paid to them, respectively, by my executors, after my decease.

"*Eighth*—All the rest, residue and remainder of my property, real, personal and mixed, of every kind and nature whatsoever and wherever situated, of which I shall die seized or possessed, or in or to which I shall have any right, title or interest at the time of my decease, I hereby give, devise and bequeath unto my cousins, Alexander A. McKay and George A. McKay, to have and to hold the same as their absolute and individual property, in fee simple, forever, share and share alike."

The codicil, omitting the formal introductory and concluding parts, is as follows:

"*First*—I hereby will and direct that the bequests to Cornelia Thomas, Isadore G. Munger, the heirs-at-law of Lucy Auger, deceased, Arthur Munger, Gussie Munger Evans, Kate Munger Honn and Charles Munger, made in and by item 7 of said original will, be increased from $25,000, as therein provided, to the sum of $50,000 each, said sum of $50,000 to be paid to each of the persons named in this item 1 of this codicil in lieu of said sum of $25,000, by my executors, as therein provided.

"*Second*—I hereby give and bequeath unto the heirs-at-law of Colby Munger, deceased, the sum of $50,000, to be divided between and paid to the said legal heirs in equal portions, share and share alike, by my executors named in the said original will, as soon after my decease as practicable."   .

In construing the will the executors, who are the defendants in error here, contended that the seventh clause gave to the persons designated therein as "the heirs-at-law of Lucy Auger, deceased," as a class, the sum of $25,000 to be divided among them, and that the first item of the codicil increased the bequest to the class to $50,000. Ozro G. Auger and four other persons, plaintiffs in error here, who constitute "the heirs-at-law" named, contended that they were *each* entitled to the sum of $25,000 under the plain language of the seventh clause of the will and $50,000 *each* under the codicil. They filed a bill in the Cook circuit court praying that the will be construed in conformity to their contention, but it was dismissed for want of equity. The Appellate Court affirmed the decree below dismissing the bill, and plaintiffs in error bring the cause here by writ of error.

We think a decree should have been rendered according to the prayer of the bill. At the time the will was made Lucy Auger was dead, and a reference to her "heirs-at-law" was a reference to persons then definitely ascertained,—as much so as if they had been specifically named. The language of the seventh clause of the will undertakes to give to the several persons designated therein "each the sum of $25,000." Upon what theory can it be urged that these persons shall, as a class, receive but the sum of $25,000 under this clause? It can not be said that Ozro G. Auger and the others who make up the persons constituting the "heirs-at-law of Lucy Auger" are referred to with less singularity than are the other persons who are called by their christian names. The word "each," in its common acceptation, refers singly

to the individuals designated in the clause, and to say that each of the persons who are the heirs of Lucy Auger, deceased, is not individually designated, is, we think, to put a limited interpretation upon the word "each" as it is commonly used.

Counsel for defendants in error cite many cases to support their theory that the designation of "heirs-at-law of Lucy Auger, deceased," means a class who take *per stirpes*. Each of the cases cited differs materially from the one under consideration. If the language of the instrument, in its common acceptation, is clear and unambiguous, the intention of the testator as therein expressed must control. As is said in *Boyd* v. *Strahan*, 36 Ill. 355 (on p. 359): "There is no other class of written instruments known to the law in which so little importance is to be attached to the technical sense of language in comparison with that sense in which the apparent object of the writer indicates his words to have been used. So far is this principle carried, that the court say in 3 Wils. 141: 'Cases on wills may guide us to general rules of construction, but unless a case cited be in every respect directly in point and agree in every circumstance it will have little or no weight with the court, who always look upon the intention of the testator as the polar star to direct them in the construction of wills.' This language is quoted approvingly by Chief Justice Marshall in *Smith* v. *Bell*, 6 Pet. 80."

Among the cases cited and relied upon by defendants in error in support of their construction of this will are *Richards* v. *Miller*, 62 Ill. 417, and *Kelley* v. *Vigas*, 112 id. 242. The first case was a devise of the residue of an estate to the testatrix's "heirs-at-law." The husband of the testatrix being an heir, it was contended that he took a part only equal in amount to that of the other persons who were her heirs, while the law gave him, as her heir, a greater portion. The court there said (p. 425): "In the case before us there are no words indicating equality

of division. The gift is to a particular class. We must invoke the aid of the statute to determine the persons who constitute the class. When invoked to ascertain the persons to take, we must follow its provisions as to the quantity they shall take,"—and the estate was given to the "heirs" *per stirpes*. The principle of that case is very different from this. Here there are words indicating an equality of distribution, while there the opposite was expressly found. Furthermore, a devise to the heirs of a third person, without reference to the quantity each should take, would, under the authority of this case, mean a devise to them *per stirpes*, or in the same proportion the statute would cast it upon them; but where the quantity is expressly designated, as so much for each person who comes within the term "heir," a very different case arises. Nor is the *Kelley case, supra*, like this in fact or principle. There the devise of a remainder was to the testator's "heirs-at-law." From the context of the will, so expressly found by the court, it appeared that the intention of the testator was to make the gift *per stirpes* to his heirs. True, the statute is resorted to to determine who are the heirs of Lucy Auger; but in the face of the language giving to "each" of them a specific sum we can not resort to the statute to determine the quantity they would take, as to do so would defeat the expressed intention of the testator in that respect. (*Allen* v. *Allen*, 13 S. C. 512). In this case we look to the statute, only, to determine who are the heirs of Lucy Auger. The quantity they shall take is not left open to us as a question of legal construction.

In the case of *McCartney* v. *Osburn*, 118 Ill. 403, a devise to the heirs of a person was held to mean the children of such person, and it was there said (p. 425): "It is conceded, and such is unquestionably the law, that if a testamentary gift be made to one person and the children of another person, as, for instance, to A and the children of B, A and the children of B, in such case, in the absence

of anything to show a contrary intention, will take per capita and not *per stirpes*. (2 Jarman on Wills, 756.) Yet it is equally well settled that the opposite construction will prevail when the intention to that effect can be gathered from the context, or, in the somewhat quaint language of Jarman: 'This mode of construction will yield to a very faint glimpse of a different intention in the context.'" In other words, the rule there announced is, that a gift to A and the heirs of B (where the heirs are definitely ascertained) is a gift to them per capita, unless a contrary intention appears. The cases relied upon by defendants in error are those of devises which contain other words, or show a state of facts which control or overturn the natural presumption arising from the plain words used.

The question then is, does the whole instrument here under consideration, construed together, contain anything tending to indicate that the word "each" refers to the "heirs-at-law of Lucy Auger, deceased," as a class, rather than to the several individuals constituting the heirs? Or, in other words, is there anything to indicate that the word "each" shall be given less than its usual signification?

It is contended, inasmuch as the second item of the codicil gave "to the heirs of Colby Munger, deceased, the sum of $50,000" to be "divided between them," (Colby Munger being the first cousin of the testator,) that this indicates an intention upon the part of the testator to give to the "heirs-at-law of Lucy Auger, deceased," only a like sum to be divided among them, she being also a first cousin. We think it cannot be fairly said the language imports such an intention. On the contrary, does it not plainly indicate the opposite intention? By item 2 of the codicil the testator demonstrated that he fully understood how to make a bequest to a *class* of heirs, "to be divided between them," and had he desired to make such a bequest to the plaintiffs in error as a class he certainly

would have done so. The construction which we have placed upon the will is further fortified by the language of the testator in the codicil, in which he says, "said sum of $50,000 to be paid to each of the *persons* named in this item 1 of this codicil." The word "persons," as here used, manifestly refers to individuals, and not to a class.

The inference that it was evidently the testator's intention to give to the heirs of a deceased cousin only the same amount he would have given to her had she been living, finds no support in the facts and circumstances of this case. The testator had no descendants as his heirs, his cousins being the nearest of his relations. He discriminates between them in making his gifts. Two of his cousins he makes his residuary legatees. To several others he gives $50,000 each and to others nothing, and this discrimination cannot be interpreted otherwise than as in furtherance of a definite plan and purpose in the mind of the testator. There were ample funds on hand to pay all the legacies, construing the seventh clause as we have done,—that is, that each of the heirs of Lucy Auger is entitled to $50,000. Had there been a shortage in any of the bequests this would have disclosed a latent ambiguity in the will, and that fact might be considered as tending to support the contention of defendants in error. But the will is free from latent ambiguities. The surrounding facts and circumstances fail to disclose anything not in harmony with the construction which we have placed upon the seventh clause of the will and the first item of the codicil.

The judgment of the Appellate Court taxing costs against the executors was right, but its judgment affirming the decree of the circuit court dismissing the bill is erroneous and must be reversed. The cause will be remanded to the circuit court, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded.*

Mr. JUSTICE BOGGS: I do not concur.