This is a petition for the custody of an infant, addressed to this court in the exercise of its general jurisdiction over the interests of infants.
The pleadings are most informal, but all objections thereto have been waived by the respondents, who consented to go to final hearing upon them as they then stood and now stand, and to have the rights of the petitioners fixed by a decree herein.
The infant, who was born September 7th, 1917, is named John F. Lippincott. His mother died on February 23d 1919, and his father died on May 21st, 1923. Prior to the mother's death the parents, with their son, resided in the city of Brooklyn, New York, where the petitioners then lived and continue to do so. Very shortly thereafter the father took the boy and removed to the home of his parents, the respondents, *Page 261 
in the city of Jersey City, where he subsequently also died after having first executed a document delegating to his mother "the care, custody and nurture" of his son, pursuant to the statute.2 Comp. Stat. p. 2627. Until the time of his mother's death the infant was in the usual contact and association with all of the parties. After her death a quarrel occurred between the boy's father and the petitioners, which resulted in a rupture of all relations, when, as just said, the surviving parent with his child took up his residence with the respondents, and it was in the state of mind created by this quarrel that the instrument just referred to was prepared and signed. At the time of the mother's death the infant was only about a year and a half old, and ever since has been kept apart and away from them, and, consequently, can hardly be said to have made their acquaintance or to have formed any attachment for them. There is no allegation or intimation, but that the respondents are eminently proper persons to have the care and custody of this little boy, who is now in his seventh year, attending school, being religiously instructed and in every other way securing all necessary material, mental and moral care. Likewise, there is no evidence that the petitioners are not also eminently respectable and proper persons for the same purpose, and, in fact, I was impressed by the fact that all of them are, while not people of wealth, substantial, hard-working and very worthy individuals.
Thus, there is presented an application by one set of grandparents of an orphaned infant for the right of visitation as against the remaining grandparents in whose custody the infant resides, without any charge against the surroundings in which he now lives. On the hearing, the prayer for custody contained in the petition was abandoned, and under the general prayer it was requested that a portion of the boy's time be awarded the petitioners. I know of no case where a similar request has ever been made of, or decided by, any court in any jurisdiction. It must be granted, if at all, under the broad inherent jurisdiction of this court, in analogy to the power of the state as parenspatriae. The interest *Page 262 
of the state in the children thereof is so broad as to almost defy limitations. In a sound judicial discretion, it has even gone to the extent of refusing custody to the very parents of a child where it was to its better interests on account of the character of those who, above all others, should have been its legal custodians, and placing the ward with a stranger.Richards v. Collins, 45 N.J. Eq. 283; Cunningham's Case,61 N.J. Eq. 454; Pom. Eq. Jur. § 1307.
The paramount consideration in all such cases is the welfare of the child itself. Richards v. Collins, supra. This case, as said by Vice-Chancellor Lane in Cole v. Cole, 89 N.J. Eq. 381,
has been uniformly cited with approval. It is an opinion by the court of errors and appeals and the leading case on this subject. It is there said:
"In a controversy over its [a child's] possession, its welfare will be the paramount consideration in controlling the discretion of the court. The strict right of the parent will be passed by, if a judgment in observance of such right would substitute a worse for a better custodian."
Mr. Justice Minturn, in Fischer v. Meader, 95 N.J. Law 59, and Vice-Chancellor Leaming, in Kapcinski v. Richardson,94 Atl. Rep. 32, deal at great length with the fact that the day has long since passed when the rights of infants, to be properly nurtured, are subordinate to the strict legal rights of parents or others in and over them, and they regarded as chattels to be disposed of as if title to them passed like any ordinary property.
But, it is said by the respondents, even conceding the jurisdiction of this court, no proper case has been made out for its exercise, because by the hypothesis, so to speak, the child is now in the custody of grandparents who are morally and financially able to give it the care and attention requisite to its health, happiness and education. I do not think, it is true, that there is any appreciable difference in the material advantages that the respective parties are able to give him. There was some slight contest as to the surroundings of the respective homes and financial ability, but there is no such disparity between them, in either respect, as would cause this *Page 263 
court to choose one rather than the other. In fact, as Vice-Chancellor Stevenson pointed out in In re Hoines,112 Atl. Rep. 613, the home of a millionaire would not be preferred to that of one entitled to the custody of a child, however humble, in which he could be brought up to become a valuable citizen. There is this consideration, however, which I feel is controlling so far as the welfare of this boy is concerned: As I have explained, he is not yet seven years of age. His grandparents are all advanced in years, and probably none of them can rationally expect to live for a great while longer, certainly not until this boy attains his majority. Should the respondents have the misfortune to die first, it will be of inestimable advantage and benefit if there shall have been cemented between him and the petitioners that devotion and love that is materially fostered by the association of one with those in whose affection he should hold a prominent place. The petitioners have brought up and launched upon the world a generation of children, and now, in their declining years, there is a fertile field to plant this offshoot of their family where he may flourish in their affection and receive and accentuate the love that will rejuvenate these grandparents. It is common knowledge that one cannot have too many friends, and that there are no material advantages or wealth, station or power, that compare in advancing the happiness of mankind with true friends.
While in a contest for custody, as distinguished from visitation, under circumstances such as appear in this case, namely, the admitted propriety of character of the custodial grandparents, the statutory appointment of a guardian by the deceased father would be controlling, I do not feel that it should be permitted to stand in the way of what is regarded as necessary for the highest welfare of the infant. It could not have been intended by the legislature to have been binding in all instances on this court, as otherwise an unfortunate selection of a guardian by a surviving parent would result in the inability of the chancellor to remove a child from surroundings most inimical to his physical, mental and moral welfare, to say nothing of impairing of the constitutional *Page 264 
jurisdiction of this court. Flanigan v. Smelting Co.,63 N.J. Law 647. Therefore, persuasive as the deceased parent's selection of a guardian might be in a contest for custody, I do not conceive that I should permit it to interfere with my judgment in a suit for the right of visitation, where to disregard it would result in a greater benefit to a child.
On these considerations, I have determined that the jurisdiction to grant the prayer of the petitioners exists and should be exercised, upon the single ground that advantageous and proper as the present surroundings of the infant are, it will be to his benefit that he have the further advantage of companionship with the petitioners; and while I will not disturb the permanent custody of the respondents, I will advise that the petitioners have the right to entertain him, under such conditions and at such times as will not interfere with his education. Visitation at the respondent's home is out of question, in view of the feeling existing between the parties and the unfortunate difficulties that have arisen among them in the past.
If counsel cannot agree, I will fix the terms with regard to the visits of the infant to the petitioners, as well as the form of bond which I shall require them to give for the performance of the conditions imposed.