## IN RE GILCHRIST'S ESTATE
## TRUSTEES OF UNIVERSITY OF WYOMING v. EADIE, ET AL.

(No. 1950; June 9, 1936; 58 Pac. (2d) 431)

(Rehearing denied August 6, 1936. See 60 Pac. (2d) 364)

For the plaintiff in error, there was a brief by *Corthell, McCollough* and *Corthell* of Laramie and oral argument by *N. E. Corthell.*

For the defendants in error, there was a brief and the cause was argued orally by *M. A. Kline* of Cheyenne.

For the defendant in error, Mary Richardson, there was a brief by *W. O. Wilson* of Cheyenne.

*M. A. Kline* in support of Motion to Dismiss Proceedings in Error.

*Corthell, McCollough* and *Corthell* in opposition to Motion to Dismiss.

162

BLUME, Justice.

This is a proceeding under our statute to distribute the property of the estate of Mary Gilchrist, deceased, and to determine who is entitled to a distributive share under her last will and testament, which, except the subscription-clause, is as follows:

"Cheyenne, Wyoming.

I, Mary Gilchrist of Cheyenne, Wyoming, do make this my last will. I appoint Daniel W. Gill, Executor of this my last will, and request that he be not required to give bond.

In case Daniel W. Gill dies before I do, then and in that event, I request that Arthur H. Marble be appointed Administrator.

I give, devise and bequeath my property, both personal and real estate as follows:

To any of my living blood relations, I give one hundred dollars each, they are to establish their relationship by filing in Court an affidavit to that effect, within one year after my death.

To Mary Richardson, the north thirty six feet of lot eight and the north thirty six feet of the east sixteen feet of lot seven, in Block One Hundred and Sixty Nine in the City of Cheyenne, Wyoming.

The balance of my estate I give, devise and bequeath as follows:

To the Womans Club of Cheyenne, five percent.

To the Young Womans Christian Association of Cheyenne, two percent.

To the Wyoming Children's Home Society five percent.

To the First Presbyterian Church of Cheyenne, ten percent.

To the Help One Another Club of Cheyenne, two percent.

To the Cheyenne Masonic Building Association, five percent.

To the Student Welfare Foundation of the University of Wyoming, the balance of my estate, with the understanding that preference be given to Cheyenne boys and girls, with my donation.

In Witness Whereof I have hereunto set my hand and seal this 8th day of November, A. D. 1930.

Signed, Mary Gilchrist."

The petition in the proceeding was filed by persons claiming to be blood relatives of the testatrix. The residuary legatees under the will filed their answer, claiming an interest in the estate. Among them were the trustees of the University of Wyoming on behalf of the bequest of the Students' Welfare Foundation mentioned in the will. The latter, dissatisfied with the decree of the court in distributing the property of the estate, filed a motion for a new trial. This was overruled, and they, thereupon, brought this case here by petition in error, making all the other parties interested in the estate parties defendants in error. The blood relatives will, ordinarily, be referred to herein as such or as relatives or as heirs. The petitioners in error will, ordinarily, be referred to as such or as trustees, or trustees of the University. Only the clause of the will relating to the bequest of $100 to each of the blood-relatives is in question here.

1. A motion to dismiss the appeal was filed herein on the ground that the plaintiff in error did not join as plaintiffs in error the other residuary legatees who are affected by the judgment below in the same manner as the petitioner in error here. All the parties interested, aside from the trustees, were, as already stated, joined as defendants in error. An action like that at bar is in the nature of an action in rem. We stated in Re Black's Estate, 30 Wyo. 55, 65, 216 Pac. 1059, that in such action "every party is an independent actor." Hence it was sufficient to make the other parties interested, parties defendants in error. Overstreet v. Trainer, 24 Miss. 484; Wells v. Wells, 4 T. B. Mon (Ky.) 152; In Re Miller's Will, 166 Pa. 97, 31 Atl. 58; Cruit v. Owen, 21 App. D. C. 378. The motion to dismiss is, accordingly, overruled.

2. Counsel for the heirs has argued that no issues were raised by the trustees as to the right of the heirs to a distributive share of $100, under the will, and that hence there is nothing before this court on this appeal. The allegations as to the rights of the heirs are contained in paragraphs 6 and 7 of the petition. The heirs, plaintiffs below, alleged that they claimed to be living blood relatives of the testatrix and entitled to a share in the estate; that they established their blood-relationship and filed the affidavit required under the will. These allegations were denied. Counsel for the heirs claims that only the allegation as to the "claim" by the heirs was denied. But, obviously, the trustees of the University did all they could to put the allegations as to the rights of the heirs in issue. If no issues in fact were raised, that cannot, in face of the denial above mentioned, be due to the trustees, but must be due, if at all, to the lack of essential allegations of the plaintiffs below—in other words, to the fact that they failed to make sufficient allegations to constitute a cause of action. Clearly, we ought not to

take cognizance of the contention of counsel for the heirs hereinabove mentioned.

3. It is the further contention of counsel for the heirs that the Student Welfare Foundation of the University of Wyoming is not, as an incorporated society, capable of taking under the will, citing 5 C. J. 1343 to the effect that an unincorporated association cannot take or hold either real or personal property, and that a conveyance to it does not pass title. It is argued, accordingly, that the trustees of the University have not shown that they have any interest in this appeal. We think that we may readily gather from the record that the Foundation is intended to assist poor students; that it is, accordingly, an association for charitable purposes; that it is controlled by trustees; and that the testatrix intended to create a charitable trust or gift. It is said in 11 C. J. 338, after referring to some cases:

"In other jurisdictions, the courts uphold charitable gifts directly to an unincorporated association, society or other voluntary body or organization, either on the ground that the association has such an existence that it can be dealt with as trustee, or on the ground that the trust will not be allowed to fail for want of a trustee, and that, if necessary, the court will appoint a trustee to administer the trust."

In 11 C. J. 339, it is said:

"Regardless of whether or not in a particular jurisdiction an unincorporated association may take as trustee or directly as donee of a charitable trust or gift, such an association may be the beneficiary of a charitable trust, where a competent person or corporation has been made trustee for it."

In note to 37 Yale Law Journal, it is stated:

"There has been a complete abandonment of the doctrine that an unincorporated association cannot be the beneficiary of a trust. * * * Where a testator inadvisedly attempts to make a direct devise to an unincorporated charitable association, courts usually seem

disinclined to allow a gift for such purposes to fail for want of a capable devisee * * *. Most courts * * * will give the attempted devise the effect of a trust, naming trustees to hold the property for the beneficiary association."

In accordance with the holding of these authorities, we think that we are constrained to overrule the contention of counsel for the heirs on this point.

4. In this case, the testatrix left no children or descendants; both of her parents as well as all of her brothers and sisters were dead. If she had died intestate, her property would have been distributed in accordance with subdivision two of Section 88-4001—our statute of descent and distribution—which reads as follows:

"If there be no children, nor their descendants, then to his father, mother, brothers and sisters and to the descendants of brothers and sisters, who are dead (the descendants, collectively, taking the share which their parents would have taken if living) in equal parts."

In other words, if the testatrix had died intestate, her property would have been distributed among the descendants of her brothers and sisters. The court did not thus distribute the property. It gave to the term "blood relatives" the broadest meaning which it has, taking into consideration the fact that the will was drawn by a layman, to which, of course, some attention should be paid in case of doubt. Schouler on Wills (6th Ed.) Sec. 869. It awarded $100 to each of 485 persons, of whom nearly 300 are not the descendants of brothers and sisters, but relatives of remoter degree. In its literal meaning the term "blood relatives" or "relatives" includes, of course, all those related to the testatrix by blood, no matter how far removed. Whether or not, however, the testatrix had that meaning in mind is another question. In 69 C. J. 205 it is stated:

"Where the word 'relatives' is used in a will in designating beneficiaries, the testator is presumed to have used the term in its legal meaning. So also, as used in a will in designating beneficiaries, 'relatives' means those persons who would take under the statute of distribution either as next of kin, or as representatives of next of kin, or as heirs, unless a contrary intention appears. Ordinarily, the term refers to those persons of the blood" etc.

The cases on the subject have been collected in a note to 57 A. L. R. 1180-1186, and it is there stated:

"Although the word 'relatives' or 'relations' has a common meaning which includes all persons who are in any way related by consanguinity, the general rule is that, when used in a will, the words are presumed to have been used in their restricted sense, so as to mean relatives or relations who are heirs or next of kin of the testator, who would take his estate under the statute of descent or distribution, in the absence of an apparent intent to the contrary."

See also Schouler on Wills (6th Ed.) Sec. 1008.

The courts are unanimous in this holding. The term "kindred" was construed in this limited sense in the case of Carr v. Bedford, 2 Chanc. Rep. 143; 21 Eng. Reprint 641, decided in 1678, and the term "relative" was similarly construed in the case of Jones v. Beale (1700) 2 Vern. 381, 23 Eng. Repr. 843. The rule is thus more than 250 years old. It is claimed that it should not be invoked in view of the fact that a specific legacy was given to each of the blood relatives. We do not see the force of that contention. In Devisme v. Mellish, 5 Ves. Jr. 509, 31 Eng. Repr. 718, testator gave 50 L "to each of his relations by blood or marriage." The rule mentioned was applied in that case. It is also argued that the rule is artificial and based on the fact that unless a restricted meaning were given to the term, it would frequently be impossible to find out who the heirs might be; that in the case at bar this

has been avoided by the fact that the bequests are given only to those blood relatives who would comply with the provisions of the will and file an affidavit. In the case of Tiffin v. Longman, 15 Beav. 275, 51 Eng. Repr. 543, too, an affidavit was required to be filed by relatives before they could receive anything under the will. Yet the court held that only relatives who would take under the statute of distribution were entitled to anything. We do not know of any good reason why we should refuse to follow that case. We find no good foundation for counsel's statement that we should presume that the testatrix meant all of her relatives no matter how remote in degree. Counsel bases this claim upon the assumption that the term "relatives" bears that meaning in the common understanding thereof; that this is the "popular" meaning thereof; that the will was drawn by a scrivener unlearned in the law, and that hence this "popular" meaning must be accepted here. Counsel's assumption rests, we think, upon a basis of sand. He confuses the *literal* meaning with the *popular* meaning. Common experience teaches that testators ordinarily confine their beneficence to a small circle of closely related relatives. They do not ordinarily bestow their bounty on those remotely related, and the thought of kinship with the latter, if it exists at all, is, ordinarily at least, dim and vague. We think that it would be astonishing to the ordinary person to find that by leaving a legacy to "relatives," he might thereby be leaving one to hundreds of persons. In view of this common experience; in face of this common thought there can be no justification for a presumption that the testatrix, when using the term "blood relatives," had in mind the literal meaning thereof, and meant to include therein all relatives no matter how far removed. The best that can be done, when that term is used in a will, is to apply the rule which, as stated, has been in existence for a quarter

of a millenium, and of which, the scrivener in this case, as well as the testatrix, may well be presumed to have had knowledge. We cannot say that they knew nothing of the common practice and experience to which we have referred. The rule just stated is said to be based upon convenience and to avoid uncertainty. But it finds its strongest support and justification, we think, in the common practice and experience above mentioned, and it should, accordingly, prevail, unless the intent of the testator to the contrary clearly appears, which is not true in the case at bar. It seems that some 600 persons or more would be included, if the construction of counsel for the heirs were adopted. Testatrix left an estate of approximately $40,000. It is unreasonable to say that she meant to give a bounty higher by fifty per cent than the value of her estate, to her relatives alone. There is nothing to show that the bequests to six local institutions were inserted in the will ironically. Counsel say that the testatrix "probably did not anticipate that so many relatives would file proofs of claim." We agree, and the statement but shows that we should be cautious in attributing to her the intention which counsel thinks should be attributed. It is also argued that in case of doubt, it should be presumed that the testatrix meant to give to her relatives rather than to strangers. 69 C. J. 100. The record is, unfortunately, silent as to the associations of the testatrix with her relatives. We may, however, glean some of the facts from the statements of counsel in their briefs, which are not disputed, aside from the facts indirectly bearing thereon which are shown by the record. The presumption just mentioned necessarily weakens in proportion to the remoteness of relationship. See Schouler, supra, Secs. 879, 880, 885. Here some of the persons claiming a share of the bounty of the testatrix are far removed in the degree of kinship. Testatrix had no children; her father and

mother were dead; she had only brothers and sisters of the half blood, all of whom are deceased. The nearest living relatives are seven nephews and nieces of the half blood; all others are further removed by one to several additional degrees of kinship. She put her nephews and nieces on the same plane as her great great grand nephews and nieces, showing an apparent lack of intimacy with, and an apparent lack of interest in, even those nearest to her in kinship. Most of her relatives lived in Scotland or some other foreign country. She required an affidavit to be filed within one year, careless whether even those most closely related to her would thereby be barred from any of her bounty. How can it be said that these circumstances are consistent with the fact that she intended that all far removed kindred, rather than the institutions of which she had been a living part, should be the beneficiaries of her bounty? We think, accordingly, that the trial court erred in its conclusions on this point. None but descendants of brothers and sisters should have been awarded the item of $100 mentioned in the will.

5. It is contended by counsel for the trustees that the distribution herein should be made literally in accordance with subdivision 2 of Section 88-4001, supra, namely, that descendants, collectively, should take the share which their parent, if living, would have taken. In other words, they contend that the money to be distributed to the heirs, should be distributed per stirpes rather than per capita, and that the award to grandnephews and grandnieces, and remoter descendants of brothers and sisters, of $100 each was erroneous. That is a much more difficult question than the question previously considered. In this case the descendants of the half brothers and half sisters of the testatrix number nearly 200. The estate left by her is of the value of approximately $40,000, and it is most difficult to believe, especially in view of the limited

value of the estate, and of the remoteness of the relationship shown, that she intended to bestow a bounty upon that number of people. Were it possible to ascertain the real intention of the testatrix, it is not improbable that we should find that she meant to remember only her *nearest* blood relatives. But the will does not so state. We cannot substitute speculation on our part for whatever is clearly expressed in the will. Simply because the *class* of persons entitled to take must be in accordance with the statute of descent and distribution, it does not follow that the amount to which each of the class is entitled is the amount specified by that statute. Northern T. Co. v. Wheeler, 345 Ill. 182, 177 N. E. 884; Ramsey v. Stephenson, 34 Ore. 408, 56 Pac. 520. In the case of Carr v. Bedford, supra (2 Chan. 143, 21 Engl. Repr. 641), a bequest to "kindred" was held to include a mother as well as her children; in other words, that distribution should be made per capita, and not per stirpes. In Tiffin v. Longman, supra (51 Eng. Repr. 543) the testator gave his estate to his daughter, and if she should die without children (which happened) then to those of his relatives who should file a claim within two months. It was held that the property should be divided between the class (the relatives coming within the statute of distribution) equally *per capita*. In Roach v. Hammond (1715) 2 Chanc. 146, 24 Eng. Repr. 180, the testator gave all his real and personal estate "for the use of his relatives." It was held that the relatives which came under the bill, limited as by the statute of distribution, should each receive the same proportion.

In the case at bar, the will gives $100 to each of the blood relatives. It creates but one class—blood relatives. It is said in 28 R. C. L. 267:

"As to whether members of a class take per capita or per stirpes, the general rule is that a devise to named individuals in equal shares requires a per capita

distribution, and that a devise to a class, such as 'all my nephews' and the like, likewise calls for a per capita distribution. The addition of the words 'equally' or 'share and share alike,' tends to strengthen this conclusion."

So it is said in Schouler, supra, that "where a gift is to a class, the individual's share will usually be per capita and not per stirpes." See also 69 C. J. 287-288. In the case of Doherty v. Grady, 105 Me. 36, 72 Atl. 869, the court, after referring to some cases, stated:

"The distinction made in these cases in regard to the right of beneficiaries named in a will to take per stirpes or per capita, depends on determining whether the phraseology of the will divide them into classes, in which the individuals of each class take equally, or establishes but one class all the members of which take equally. The language of the will designates but one class, his legal heirs, who take in equal shares according to his express directions."

In the case of Hoey v. Kenny, 25 Barb. 396, the testator devised one half of his estate to his wife to be distributed by her by will to such of testator's relatives as she might deem fit and just. She died without leaving a will, and without exercise of the right of distribution. The court said:

"As she did not exercise the power of distribution, and it was a power in trust for the benefit of third parties, the law distributes the property equally among the whole class."

See also Fielden v. Ashworth, L. R., 20 Eq. 410, 33 L. T. N. S.

In bequests to descendants equally, or to all the descendants of any person, or to the descendants simply, the rule has been said to be that all take per capita, unless the contrary intention appears. Note 16 A. L. R. 54. So it has been held that "under a bequest to the children of several persons, the children take per

capita, and not per stirpes, in the absence of words indicating a different intention." Note 16 A. L. R. 61. So it is said that, in the absence of qualifying words, under a bequest to the children of several persons, the beneficiaries take per capita. Note 16 A. L. R. 79. See also Note 31 A. L. R. 799-807, and note 78 A. L. R. 1385-1415.

The rule stated in Ruling Case Law, above cited, does not, however, appear to be uniform. Some of the courts favor the construction of a will whereby the beneficiaries take per stirpes, more than others. Note 16 A. L. R. 16. So some of the courts, if not most of them, have given a peculiar significance to the term "heir." And it is said in note 16 A. L. R. 33:

"A rule of construction which is very generally, although, as will presently appear, not universally, recognized is that a devise or bequest to heirs, whether it be to one's own heirs, or to the heirs of a third person, designates not only the persons who are to take, but also the manner and proportions in which they are to take; and when there are no words to control the presumption of the will of the testator, the law presumes his intention to be that they shall take as heirs would take by the law of intestate succession."

Thus in Hoch's Estate, 154 Pa. 417, 26 Atl. 610, the court said:

"Now if the testatrix had directed her estate to have been divided in equal shares among her descendants, these words would have placed them all in one class and provided a per capita distribution among them. So if she had said 'I want my estate to be divided among my children and grandchildren.' But the distribution she directed was among her legal heirs. This refers their ascertainment to the laws of the state."

The cases more analagous to the case at bar than others are those which have interpreted a will containing, as that in the case at bar, the term "each." In Matter of Turner, 208 N. Y. 261, 101 N. E. 905; Ann.

Cas. 1914 D. 245, the testator bequeathed the remainder of his property as follows: "To my nephew, Byron J. Tillman, one share; to my niece Grace Joy, one share; and to *each* of the children of my brother George Turner one share, to be divided equally among my said nieces and nephews share and share alike." George Turner left six children. The question was whether Byron J. Tillman should receive one share; Grace Joy one share, and the six children of George Turner one share, or whether all eight should receive an equal share. The court held the latter to be true, saying:

"It is plainly impossible to adopt the construction contended for by the learned counsel for the appellant, unless we disregard the presence of the word 'each' in the bequest to 'each of the children of my brother George Turner.' This word is correctly defined in Anderson's Law Dictionary as meaning 'everyone of the two or more comprising the whole.' In State v. Maine Central R. R. Co., 66 Me. 488, 510, it is said 'each means every one of any number separately considered.' Assigning to it the signification in the clause in question, the bequest is the gift of one share to every one of the children of the testator's brother George and can only be carried into effect by treating the entire residuary clause as a bequest per capita to the individuals named or indicated therein."

In Penny's Estate, 159 Pa. 346, 28 Atl. 255, the testator directed his residuary estate to be distributed to his sister Martha, one share, and to each of his nephews and nieces then living one share. It was held, as in the preceding case, that each and all took per capita and not per stirpes, the court saying that the word "each" separates the class into individuals and is equivalent to a detailed enumeration." In Scott's Appeal, 163 Pa. 165, 29 Atl. 877, the court said:

"Leaving out the parenthetical enumeration of the persons intended to be embraced in the gift, the language is as follows: 'I will and devise the remainder

of my estate after her (the nieces') decease without issue as aforesaid to be divided among my nephews and nieces * * * each to take share and share alike.' Nothing could be more explicit than this * * *. The division is to be such that 'each' is 'to take share and share alike.' Each refers to the persons described in the first part of the paragraph, the nephews and nieces who are identified by the videlicet clause. The expression 'share and share alike' standing alone might refer to a division among classes as well as among individuals; but this cannot be said of 'each to take,' which, unless applied to individuals, as the grammatical structure of the paragraph requires, must be regarded as redundant and meaningless. This would violate the elementary rule of construction."

In Donohoe's Estate, 5 Pa. D. & C. Rep. 165, affirmed in 282 Pa. 254, 127 Atl. 625, there was a devise to each of "brother Dan's children and Phil (a brother) share and share." Dan had six children. The court held that the persons were to take per capita, the estate to be divided into seven equal parts, the court saying that "we can find no case in which the word 'each' has been used where there has been a per stirpes distribution." In the case of Everitt v. Carman, 4 Red. (N. Y.) 341, the testator bequeathed the residue of his estate to his wife and persons answering the description of heirs at law "to be divided between them equally in such manner that each of his said heirs-at-law should take equal shares." It was held that all would take per capita. The case of Rixy v. Stucky, 129 Mo. 377, seems somewhat inconsistent with some of the cases herein cited, but is not inconsistent with the conclusion at which we have arrived in the case at bar under the will in question. See also note 16 R. C. L. 28; Note 78 A. L. R. 1396; 7 British Ruling Cases 800.

Two cases are more closely in point herein than any others which we have been able to find. These are Jones v. Beale, 2 Verne 381, 23 Engl. Repr. 843, and Auger v. Tatham, 191 Ill. 296, 61 N. E. 77. In the

first of these cases the testator gave 15 pounds apiece to each of his relations of his father's and his mother's side. Dorothy Smith was one of these. It was held that she and her four children should each receive 15 pounds. In Augur v. Tatham, supra, the will provided: "I hereby give and bequeath unto (naming four) the heirs at law of Lucy Augur, deceased, Arthur Munger (and naming four more), "each the sum of twenty five thousand dollars to be paid to them, respectively, by my executors, after my decease." It was contended that the four heirs of Lucy Augur should take per stirpes. The court, ruling against this contention, stated among other things:

"The language of the seventh clause of the will undertakes to give to the several persons designated therein each the sum of $25,000. Upon what theory can it be urged that these persons shall, as a class, receive but the sum of $25,000 under this clause? * * * The word each in its common acceptation refers singly to the individuals designated in the clause. * * * True the statute is resorted to to determine who are the heirs of Lucy Augur; but in the face of the language giving to 'each' of them a specific sum we cannot resort to the statute to determine the quantity they would take, as to do so would defeat the expressed intention of the testator in that respect. Allen v. Allen, 13 S. C. 512. In this case we look to the statute only to determine who are the heirs of Lucy Augur. The quantity they shall take is not left open to us as a question of legal construction."

The authorities cited leave no room for doubt that we must hold that the blood relatives, in so far as they come within the statute of descent and distribution, take under the will in question here per capita and not per stirpes. Each has been given the sum of $100, and we cannot interpret the language to mean anything else. That interpretation is strengthened, if it can be strengthened, by the use of the term "any," which itself excludes the theory of distribution per stirpes.

6. It is contended by the petitioner in error that the descendants of the brothers and sisters of the testatrix should, instead of $100, receive only $50, in view of our statute that collateral relations of the half blood shall, upon intestacy, inherit only half the measure of collateral relatives of the whole blood. The deceased had no brothers or sisters of the full blood, but only of the half blood. In view of that fact, the persons contemplated in her will necessarily were the descendants of the half blood. Sander's Estate, 126 Wisc. 660, 105 N. W. 1064; 5 Ann. Cas. 508; Varrell v. Wendell, 20 N. H. 431; 69 C. J. 206; Schouler, supra, Sec. 1009, states that prima facie relatives of the half-blood are included in a gift to collateral relatives. See also note 29 L. R. A. 541, 544; note 26 L. R. A. N. S. 603. The amount to be received by each was fixed at $100, and that amount must, as heretofore shown, govern herein.

7. Counsel for the trustees have assigned as error that the court held that affidavits made by parents on behalf of minor children were sufficient. We do not think that it is necessary to pass on this point. In fact we think we are precluded from passing thereon by the position taken herein by counsel for the petitioners in error. They state in one part of their brief:

"The subsequent clause admonishing them (the relatives) to file affidavits was a natural and proper requirement to facilitate the settlement and distribution of the estate. It seems to us even debatable whether one who fell within the scope of the enlarged meaning of the term 'relations' should be considered barred by failure to file an affidavit within the year, or to file one at all. The dispositive language of the clause is not so limited. No penalty is prescribed for default in filing."

Again, they state that the clause relating to the filing of the affidavit doubtless:

"was inserted with the thought that the final settlement of the estate at the expiration of the legal period

of one year would be facilitated and expedited by the filing of affidavits. It is true that the filing was not necessary."

Clearly, if the filing of the affidavit was not necessary, it cannot be held that the court erred in holding affidavits made by parents to be sufficient. We may add, that the trial court held that the filing of an affidavit as provided in the will was necessary, and that holding is not attacked.

The only other point argued relates to the proof of heirship, which, however, in view of our holding that the relatives entitled to take are each entitled to $100 is, we think, fully answered.

The judgment of the trial court must be modified, and the cause is remanded to the district court with direction to modify its decree, eliminating from the benefits under the will, all claimants of blood-relationship other than descendants of brothers and sisters of the testatrix, and to award $100 only to each of such descendants of brothers and sisters who have filed an affidavit as, and within the time, provided in the will. As so modified, the judgment is affirmed.

*Modified and affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.

### ON PETITION FOR REHEARING

BLUME, Justice.

A petition for rehearing has been filed herein by the Trustees of the University of Wyoming, who believe that this court in its original opinion was not sufficiently explicit, and therefore desire us to decide in clearer terms (1) whether a legacy claimant who traces his descent through a living parent is entitled to participate, and (2) whether, in the case of each legacy claimant, the facts stipulated satisfy the re-

quirement of the burden of proof that no intervening descendant in his line intercepts the inheritance. The second point is secondary and subsidiary, and, as is admitted, is immaterial if the first is answered in the affirmative. We answered the point in the affirmative in the original opinion, and we think clearly so, for after stating the contention of the Trustees to the effect that the money should be distributed per stirpes, we concluded that "the authorities cited leave no room for doubt that we must hold that the blood relatives, in so far as they come within the statute of descent and distribution, take under the will in question here per capita and not per stirpes." Counsel believe this holding to nullify our further holding that we must go to the statute to determine who are the "blood-relatives" of the testatrix. But we do not think so. The identical point has been before other courts, in cases cited in the original opinion, and in which the same conclusion was reached which was reached by us on account of the particular language of the testamentary provision involved therein. It must be forgotten that, after all, the intention of the testatrix, as expressed in the will, must govern. We cannot resort to the statute mentioned at all, if inconsistent with the will. When the testatrix provided that $100 should be paid to each of her blood relatives, she left in doubt as to what she meant by such "blood relatives." That being true, we held that we should resort to the statute, and limit the term to the descendants of brothers and sisters. In other words, the will must be read as stating: "To any of the living descendants of my brothers and sisters I give $100 each." There can, of course, be no question that a legacy claimant who traces his descent through a living parent, when such parent is a descendant of a brother or sister of testatrix, is himself such descendant of the testatrix. If there had been a doubt as to whether the testatrix intended to include

such claimant, we could then have gone to the statute of distribution, and have held that the distribution should be per stirpes. But the language of the testatrix in using the term "any" and "each" precluded such doubt, as was fully shown by numerous authorities cited in the original opinion, and there are no cases to the contrary under facts similar to those before us.

Though our own opinion has not persuaded counsel herein, a careful reading of the cases cited by us will, we think, have that result.

Were we free to conjecture as to what the intention of the testatrix actually was, we should not, as intimated in our original opinion, hesitate to hold that testatrix meant to bestow most of her bounty upon the "institutions of which she had been a living part." But the plain language of her testament leaves us no choice. We cannot ignore the unequivocal and substantially unanimous holdings of the many courts. We therefore again answer the first point above mentioned in the affirmative, and the peition for rehearing herein is denied.

*Rehearing denied.*

KIMBALL, Ch. J., and RINER, J., concur.