**Don LEAKE and Jeanne Leake, Appellants,**

v.

**Virginia M. GRISSOM, formerly Virginia M. Leake, Appellee.**

No. 53709.

Supreme Court of Oklahoma.

July 22, 1980.

Blevins & York by James B. Blevins, Oklahoma City, for appellants.

Mattingly & Conyers by Howard W. Conyers, Seminole, for appellee.

HODGES, Justice.

This case concerns an application by Don Leake and Jeanne Leake, appellants, for the right to visit their grandchildren. The appellants sought to invoke 10 O.S.Supp. 1978 § 60.16(3) and 10 O.S.Supp.1978 § 5 to support the application. The district court found that the grandparents' application for visitation rights could not be approved under 10 O.S.Supp.1978 § 60.16(3)[1] because the consent to adoption of the children was not given to a blood relative but rather to the husband of the natural mother of the children. The court also determined that 10 O.S.Supp.1978 § 5[2] was not applicable because the natural father of the children was living.

The Leakes are the natural paternal grandparents of M.L.G. and S.R.G. The children were adopted by their natural

1. It is provided by 10 O.S.Supp.1978 § 60.16(3):

"When one or both natural parents of a child are deceased or if they are divorced and a consent to adoption is executed to a blood relative, any grandparent, who is the parent of the child's deceased or divorced natural parents, may be given reasonable rights of visitation to the child, in accordance with the provisions of Section 5 of this title. The district courts are vested with jurisdiction to enforce such visitation rights and make orders relative thereto upon the filing of a verified application for such visitation rights. Notice as ordered by the court shall be given to the person or parent having custody of said child and the venue of such action shall be in the county of the residence of such person or parent, provided, however, that this section shall not apply to children born out of wedlock."

2. The legislature amended 10 O.S.Supp.1975 § 5 by 10 O.S.Supp.1978 § 5 to provide in pertinent part:

"When both parents are deceased or if they are divorced, any grandparent, who is the parent of the child's deceased or divorced parent, shall have reasonable rights of visitation to the child, when it is in the best interest of the child. The district courts are vested with jurisdiction to enforce such visitation rights and make orders relative thereto, upon the filing of a verified application for such visitation rights. Notice as ordered by the court shall be given to the person or parent having custody of said child and the venue of such action shall be in the county of the residence of such person or parent.

"When one natural parent is deceased and the surviving natural parent remarries, any subsequent adoption proceedings shall not terminate any grandparental rights belonging to the parents of the deceased natural parent unless ordered by the court and after opportunity to be heard, provided the district court deems it in the best interest of the child."

mother's husband. The parental rights of the children's natural father were terminated after he failed to contribute to the support of his children for over a year. His consent to the adoption was not given, nor was it required.[3]

## I

It is conceded by the grandparents that 10 O.S.Supp.1978 § 60.16(3) is not applicable unless the consent to the adoption is executed to a blood relative. The grandparents contend that consent was given to a blood relative, within the contemplation of the statute, because the children were adopted by the natural mother and her husband. Their argument is that the adoption was a joint adoption by the natural mother and her present husband; and that a necessary prerequisite to the adoption was the consent of the mother. The children were adopted by the natural mother's husband. There is no evidence that he was in any way a blood "relative."[4] Contrary to the appellant's assertion, that the adoption was a joint adoption, the consent to the adoption was given by the mother to her husband, Richard Clarence Grissom.

## II

Adoption creates a legal relationship of parent and child between persons who were not so related by nature or law. Except for illegitimate children, if the natural relationship of parent and child exists, there is no need for a legally created relationship. Adoption confers no benefits or rights, nor does it impose any obligations or duties which did not exist as the result of the natural relationship. The Legislature did not intend to provide a proceeding for a parent to adopt his or her natural legitimate child.[5] The natural mother of a child can legally adopt her child only if her pa-

rental relationship had previously been severed as a matter of law. In *Marshall v. Marshall*, 196 Cal. 761, 239 P. 36, 37 (1925) the California Supreme Court said:

" . . . It seems unthinkable that one who is both the natural mother and the legal mother of a child can legally adopt such child. . . ."

This Court is aware that some lawyers out of an abundance of caution have designated adoptions of this sort as joint adoptions. However, the statute 10 O.S. Supp.1974 § 60.3(1) provides that persons eligible to adopt a child include: a husband and wife jointly; or either the husband or the wife if the other spouse is the parent of the child.[6] It is apparent from an analysis of the statute that the natural mother of the children was ineligible to adopt them.

## III

In 1977, this Court promulgated *In the Matter of Fox*, 567 P.2d 985 (Okl.1977). This decision held that, while this Court is sympathetic to the desire of grandparents to visit their grandchildren, under the Uniform Adoption Act, 10 O.S.1971 § 60.16, the right of visitation is within the discretion of the adoptive parents. In *Fox*, the children were adopted by the paternal grandparents after their son, the children's natural father, gave his consent following the death of the children's mother. The maternal grandmother sought visitation rights, which the trial court granted. The case was reversed on appeal.

Apparently in response to the *Fox* decision, 10 O.S.1971 § 60.16 was amended. The legislature provided in § 60.16(3) that if consent to adoption is executed to a blood relative, the district court may award visitation rights to any grandparent if it is in

---

3. See 10 O.S.Supp.1974 § 60.5(1).

4. Although there are no Oklahoma definitions, in *In re Gilchrist's Estate*, 50 Wyo. 153, 58 P.2d 431, 435 (1936) the Wyoming court defined blood relative as one related by blood.

5. *Gilbertson v. Gilbertson*, 498 P.2d 1381, 1384 (Okl.1972).

6. It is provided by 10 O.S.Supp.1974 § 60.3(1):
 "The following persons are eligible to adopt a child:
 (1) A husband and wife jointly, or either the husband or wife if the other spouse is a parent of the child."

the best interest of the child. To ameliorate our decision in *Fox*, 10 O.S.Supp.1975 § 5 was also amended. Paragraph 3 of § 5 provides for visitation rights if one natural parent is deceased, and the surviving natural parent remarries, with the proviso that any subsequent adoption proceeding will not terminate the grandparental rights of the decedent's parents unless ordered by the district court.[7] This provision is not applicable to the facts in this case. The provision pertinent to the factual situation present is the second paragraph of § 5. The statute provides for reasonable visitation by any grandparent who is the parent of the child's divorced parent when it is in the best interest of the child. This section does not mention or provide for the possible occurrence of an adoption. The remedy fashioned after *Fox* by 10 O.S.Supp.1978 §§ 5 and 60.16(3) is limited to factual situations similar to the one presented in *Fox*.

### IV

 The grandparents allege that they have a constitutional right to visit their grandchildren. The right of a parent to the companionship, care, custody and management of his/her child is a basic fundamental right protected by the United States and Oklahoma Constitutions.[8] The right of visitation in the absence of a statute derives from the right to custody. A grandparent who has no right to the custody of the child is not entitled to an award of visitation rights. A parent is under no legal obligation to permit a child to visit its grandparents in the absence of a statute.

This Court is not insensitive to the yearning of grandparents for the company of their grandchildren. However, this longing may not be translated into a legal right in the absence of a statute dictating visitation. Where the adoption statute accords the adopted child the status of a natural child, the court, in the absence of statutory authority to the contrary, may not grant visitation privileges to the grandparents. The parents are free to permit visits by the grandparents, but there is no legal authority for compelling them to do so.[9]

AFFIRMED.

LAVENDER, C. J., IRWIN, V. C. J., and BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

WILLIAMS and OPALA, JJ., dissent.

OPALA, Justice, dissenting:

Resting its decision on what I consider to be unacceptably narrow construction of the legislative language,[1] the court rejects today—as nonactionable—the claim by paternal grandparents to the companionship of their underage offspring now in the custody of the natural mother and her new husband who is the adoptive father. The court's pronouncement gives continued effect to prior case law which refuses to extend recognition in equity to any grandparental quest for access—however slight or limited.[2] I cannot join in the court's opinion because:

1) The grandchildren in this case still retain the very same rights to inherit from

---

7. See note 2, supra.

8. *J. V. v. State*, 572 P.2d 1283 (Okl.1977).

9. *Johnson v. Cook*, 274 Ky. 841, 120 S.W.2d 675 (1938); *Jackson v. Fitzgerald*, 185 A.2d 724 (D.C.Mun.Ct.App.1964); Annot., "Visitation Rights Of Persons Other Than Natural Or Adoptive Parents," 98 A.L.R.2d 325 (1964).

1. 10 O.S.Supp.1978 § 5 and 10 O.S.Supp.1978 § 60.16(3). § 5 provides in pertinent part:
"* * * When one natural parent is deceased and the surviving natural parent remarries, *any subsequent adoption proceedings shall not terminate any grandparental rights belonging to the parents of the de-*

ceased natural parent unless ordered by the court and after opportunity to be heard, provided the district court deems it in the best interest of the child." [Emphasis added] The applicable part of § 60.16(3) provides: "When one or both natural parents of a child are deceased or *if they are divorced and a consent to adoption is executed to a blood relative*, any grandparent, who is the parent of the child's deceased or divorced natural parents, may be given reasonable rights of visitation to the child . . . .". [Emphasis added]

2. *Matter of Fox*, Okl., 567 P.2d 985, 987 [1977].

the grandparents as they had before the adoption took place by the mother's present husband.[3]

2) As relatives in the third degree the grandparents have *general statutory standing* to litigate with the parents *any* controversy over the welfare of the underage offspring. They may file a suit to protect that offspring from abuse of parental authority.[4] The new husband's adoption of these children did not alter the grandparents' status in this regard.

3) The grandparents have *special statutory standing* to assert a claim for access to the offspring under the provisions of 10 O.S.Supp.1975 § 5 and 10 O.S.Supp.1978 § 60.16(3). Those statutes should be construed together in light of the objective doubtless intended by the legislature. Grandparents were to be allowed access to court for adjudication of visitation claims when their offspring is an orphan or if its natural parents are divorced. The post-decree adoption was not intended as a barrier so long as the child *remained with at least one blood relative* as a parent. The obvious intent of the two cited enactments, read together, was to prevent alienation from grandparents in all those instances in which the post-death or post-decree adoption has not placed the offspring beyond the circle of the *child's consanguinity*. The grandparents in this case meet the statutory test of § 60.16(3) as so construed. This is so because by their adoption the grandchildren have not been given a filial status vis-a-vis two new parents, both of whom are strangers to the blood line.

4) Equity must recognize—independent of statute—a claim by the grandparents to access and companionship of their offspring so long as, in the chancellor's view, this may be done without injury to the welfare of the grandchildren and their existing milieu.[5]

The court's view of grandparental statutory claim to the companionship of their

offspring is far too narrow to merit my approbation. It rests on an overly restrictive, literal construction of §§ 5 and 60.-16(3). Moreover, the court persists in refusing to recognize that the grandparents' claim may be entertained in the exercise of the district court's equitable cognizance.

There is *absolutely nothing* in §§ 5 and 60.16(3) to indicate—directly or obliquely—that a child's post-divorce adoption by the custodial parent's new spouse was to serve as a legislative license either to alienate or even to isolate that child from those of his grandparents who—through *no* fault of theirs—wound up on the custody-less side of the fractured family. Their claim of access to the offspring for uninterrupted enjoyment of affection and companionship doubtless survives the adoption because it remains unaffected by it. *It is nowhere barred either expressly or by implication. No* enactment in this state fetters—however slightly—the freedom of equity to recognize grandparental quest for visitation as falling within the purview of its traditional cognizance. *No* child has ever been legislatively condemned to suffer estrangement from his grandparent and *no* grandparent's claim of access has ever been statutorily declared to be non-actionable. *All* existing impediments to the exercise of chancery jurisdiction are *purely self-imposed*.

We are free to unshackle ourselves from the straitjacket of the past. We *can* open the portals of equity with pronouncements that will make that system hospitable to grandparents' suits for access. Indeed, the court might be wise to follow the course I counsel. Its adoption would rescue from a grave threat of inevitable atrophy those tender feelings of affection, apt to be harbored within every child's "larger family", which invariably outlive the broken marriage of the parents but rarely receive from our courts the culture needed for continued, post-divorce nurture and growth. A chancellor's sympathetic ear—alert to the prob-

3. *Stark v. Watson*, Okl., 359 P.2d 191 [1961].

4. 10 O.S.1971 § 9; see *Logan v. Smith*, Okl., 602 P.2d 647, 650 [1979] (dissenting opinion by Opala, J.).

5. *Re Lippincott*, 96 N.J.Eq. 260, 124 A. 532 [1924]; *Lippincott v. Lippincott*, 97 N.J.Eq. 517, 128 A. 254 [1925].

lem by sensitive case law—could succeed in affording protection to these fragile familial ties and thus save them from ultimate destruction in the aftermath of a divorce—unleashed climate of hostility in which each parent selfishly presses our adversary system to *win no less* than the child's complete and undivided allegiance.

In this era of widespread and rapid family disintegration, grandparents may well be *legally accepted* as quite often the only source of emotional stability and psychic calm in the child's immediate environment. Their concern and affection should not be easily discounted by the courts. The law must open its eyes to the reality of life in a society in which family breakup is an everyday occurrence.

I would hold that the paternal grandparents in this case have standing—both under the statute and in equity—to challenge a judicial inquiry into their quest for visitation. The chancellor should hence be directed to entertain the suit, on remand, and gauge its merits by applying time-honored equitable considerations.

I am authorized to state that WILLIAMS, J., concurs in these views.